## Commonwealth *v.* Channing, Appellant.

*Criminal law—Special verdict—Conclusion from facts—Extortion.*

1. A jury may render a special verdict in a criminal case, wherein the facts are found and the legal inference of guilt or innocence is referred to the court; but where this unusual mode of procedure is adopted a conviction cannot be sustained unless the guilt of the defendant of the specific offense charged in the indictment is the inevitable legal conclusion from the facts stated in the special verdict.

*Criminal law—Extortion—Special verdict—Coal and iron policeman.*

2. A person indicted for extortion cannot be convicted of such an offense on a special verdict which states that the defendant was commissioned by the governor as a coal and iron policeman, that he duly qualified as such, and received a compensation of a stated sum by agreement from a coal company; that he was authorized to exercise within the county for which he was commissioned all the powers of policeman of the city of Philadelphia under Acts of February 27, 1865, P. L. 225, and April 11, 1866, P. L. 99; and that during the term for which he was commissioned and was being compensated as stated, he received from the county in two criminal cases, fees and mileage which were taxed in his favor for serving subpœnas for the commonwealth and executing commitments issued by a justice of the peace.

3. Such a special verdict is insufficient to sustain a conviction because it does not state the facts from which a legal conclusion must necessarily be drawn, not only that the defendant was prohibited by statute or rule of public policy from taking the fees, but also that he took them by color of his office.

Argued Oct. 6, 1913.  Appeal, No. 3, April T., 1913, by defendant, from judgment of Q. S. Washington Co., Feb. T., 1913, on verdict of guilty in case of Commonwealth v. John R. Channing.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Indictment for extortion.

The jury returned a special verdict as follows:

We, the jurors impaneled in this case, find the following facts:

On June 1, 1910, the defendant, John R. Channing, was, at the instance and request of The Vesta Coal Company, commissioned by Governor Edwin S. Stuart a coal and iron police for the said Vesta Coal Company, under the provisions of the Act of Assembly of April 11, 1866, P. L. 99, sec. 1, supplementary to, and amending the Act of February 27, 1865, P. L. 225, the term of the commission of the said John R. Channing as such coal and iron police being for the term of three years from the date of his said commission.

The said John R. Channing by virtue of his said commission was to have and to hold the said office of coal and iron police and to exercise all the powers of policeman of the city of Philadelphia, in the said county of Washington.

The said John R. Channing took his oath of office as such coal and iron police on June 1, 1910, and his commission as such coal and iron police and his oath of office are of record in the recorder's office of Washington county in Commission Book No. 7 at page 351.

The said John R. Channing received as compensation for his services as such coal and iron police a salary of $80.00 per month, which said sum was paid him by the said Vesta Coal Company.

On March 5, 1912, the said John R. Channing made an information before J. D. Hornbake, a justice of the peace at the borough of California, Washington county,

against one Joe Orosz, in which information the said Joe Orosz was charged with malicious mischief, and a warrant for the arrest of the said Joe Orosz was issued by the said J. D. Hornbake, justice of the peace, to the said John R. Channing, who arrested the said Joe Orosz and took him to the office of the said J. D. Hornbake. The said Joe Orosz was subsequently given a hearing before the said J. D. Hornbake and was held for court and a return thereof was made by the said J. D. Hornbake to the court of quarter sessions of the peace of Washington county, which said case was filed and docketed to No. 28, May Term, 1912. The defendant in that case, Joe Orosz, subsequently entered a plea of guilty to said charge and on his plea was sentenced by the court of quarter sessions of Washington county.

In connection with the arrest of the said Joe Orosz, certain services were performed by the said John R. Channing and certain fees for those services were taxed up on the transcript by the said J. D. Hornbake, in favor of the said John R. Channing, as appears by the transcript filed to said number and term, which said services and fees were as follows:

| | |
|---|---:|
| Serving subpœna for commonwealth.... | $1.40 |
| Mileage............................. | .48 |
| Executing commitment................ | 1.00 |
| Mileage............................. | 4.80 |
| Prisoner's car fare.................... | .85 |
| Prisoner's meals...................... | 1.00 |
| Total............................. | $9.53 |

In connection with this case the said John R. Channing served a subpœna on certain witnesses, and there was taxed up in his favor for fees and mileage in connection with the service of said subpœna the sum of $3.51.

On February 20, 1912, one A. O. Conoway made an information before the said J. D. Hornbake, justice of the peace as aforesaid, against one Philip Terpid, in

which the said Philip Terpid was charged with attempting to blow up a building, and a warrant for the arrest of the said Philip Terpid was issued by the said J. D. Hornbake, justice of the peace, to Henry B. Lake and John R. Channing, and the said defendant, Philip Terpid, was arrested and taken to the office of the said J. D. Hornbake. The said Philip Terpid was subsequently given a hearing before the said J. D. Hornbake and was held for court and a return thereof was made by the said J. D. Hornbake to the court of quarter sessions of the peace of Washington county, which said case was filed and docketed to No. 18, May Term, 1912. On May 7, 1912, the grand jury of the May Term of court returned "Not a True Bill" and the defendant was discharged.

In connection with the arrest, hearing, binding over and commitment of the said Philip Terpid certain services were performed by the said John R. Channing and certain fees for those services were taxed up on the transcript by the said J. D. Hornbake, in favor of the said John R. Channing, as appears by the transcript filed to said number and term, which said services and fees are as follows:

| | |
|---|---|
| Mileage | $ 9.60 |
| Serving subpœna for commonwealth | 2.00 |
| Mileage | 10.08 |
| Executing commitment to lockup | 1.00 |
| Prisoner's car fare | 1.85 |
| Total | $24.53 |

Subsequently the said John R. Channing receipted on the cost docket in the office of the clerk of courts of Washington county for all the costs above set out, and subsequently received from the commissioners of said Washington county a warrant on the county treasurer for the amount of said costs and upon indorsement of said warrant the said John R. Channing received from

514 COMMONWEALTH *v.* CHANNING, Appellant.

Statement of Facts—Opinion of the Court. [55 Pa. Superior Ct.

the county treasurer of Washington county the amount of said costs.

If the facts stated and the acts of the defendant do, in the opinion of the court, constitute the offense of extortion, then the jury do say that the defendant is guilty of extortion as charged. If they do not constitute such offense, then the jury find the defendant not guilty.

*Error assigned* was in entering a verdict of conviction on the special verdict.

*Andrew M. Linn,* for appellant, cited: Com. v. Saulsbury, 152 Pa. 554; Evans v. Trenton, 24 N. J. L. 764; Dutton v. Philadelphia, 6 Phila. 597; Burrall v. Acker, 23 Wend. 606; United States v. Harned, 43 Fed. Repr. 376; Hamlin v. Berks County, 8 Pa. C. C. Rep. 462; Pyle v. Sweigart, 18 Lanc. Law Rev. 81; McAndrew v. Jones, 3 Pa. Justices' L. R. 128.

*T. H. W. Fergus,* assistant district attorney, with him *Richard G. Miller,* district attorney, *Erwin Cummins* and *Acheson & Crumrine,* for appellee, cited: Franklin County v. Conrad, 36 Pa. 317; Fry v. Berks Co., 38 Pa. Superior Ct. 449; McElhinney v. Venango County, 6 Pa. Justices' L. R. 83; McHenry's Petition, 6 Pa. Superior Ct. 464; Hamlin v. Berks County, 8 Pa. C. C. Rep. 462; Walsh v. Luzerne Co., 6 Pa. Justices' L. R. 142; Com. v. Saulsbury, 152 Pa. 554; Com. v. Wilson, 30 Pa. Superior Ct. 26.

OPINION BY RICE, P. J., February 20, 1914:

The right of the jury to render a special verdict in a criminal case, wherein the facts are found and the legal inference of guilt or innocence is referred to the court, is not questioned by counsel and is recognized by the authorities: 4 Bl. Com. 361; 1 Archbold's Crim. Pl. & Ev. (1877) 570; 12 Cyc. of Law & Pr. 688; Com. v. Chathams, 50 Pa. 181; Com. v. Eichelberger, 119 Pa.

254. But it is very clear that, where this unusual mode of procedure is adopted, a conviction cannot be sustained unless the guilt of the defendant of the specific offense charged in the indictment is the inevitable legal conclusion from the facts stated in the special verdict. While the jury need not follow the technical language used in the indictment, yet, as the court is not at liberty to draw inferences of fact, any ingredient of the offense that is not conclusively established by the facts found by the jury and stated in their verdict must be taken not to exist.

It is stated in the special verdict under consideration, that at the instance and request of the Vesta Coal Company the defendant was commissioned by the governor a coal and iron policeman for the term of three years, and duly qualified as such; that he received as compensation "for his services as such coal and iron policeman" $80.00 a month, which sum was paid him by the Vesta Coal Company; and that at the time of the commission of the alleged offense his term had not expired. It is also stated in the special verdict, and is shown by the acts under which he was commissioned, that he was authorized to exercise within the county of Washington "all the powers of policemen of the city of Philadelphia:" Act of February 27, 1865, P. L. 225, and Act of April 11, 1866, P. L. 99. According to the doctrine of Com. v. Saulsbury, 152 Pa. 554, he was not an officer of the commonwealth, within the meaning of sec. 12 of the act of March 31, 1860; but he was such an officer as could be indicted for common-law extortion. This is the offense of which it is claimed he was guilty, and, therefore, it is highly important that the findings of the jury as to the acts he committed be very carefully scrutinized, and that in pronouncing judgment it be assumed that these findings embrace "the specific, exact, and complete facts" which determine the nature of his act. As to this subject, the verdict states that, during the term for which the defendant was commissioned

and was being compensated as above stated, he received from the county, in two criminal cases, fees and mileage which were taxed in his favor for serving subpœnas for the commonwealth and executing commitments issued by the justice of the peace. No other facts tending to show the true nature of his act are stated, and none other can be implied.

Is the defendant's guilt of the offense charged the inevitable legal conclusion from these facts? We are of opinion that it is not. To extort, in the ordinary meaning of the word, is to obtain by violence, threats, compulsion, or the subjection of another to some necessity; but at common law the offense denominated extortion does not necessarily involve actual duress of that sort, and nothing of that kind is alleged or shown in the present case. "Extortion signifies in a strict sense the taking of money by any officer by color of his office either where none at all is due, or more than is due, or where it is not yet due:" 1 Hawkins' P. C. 418. Blackstone defines it to be, "an abuse of public justice, which consists in any officer's unlawfully taking, by color of his office, from any man, any money or thing of value, that is not due to him, or more than is due, or before it is due:" 4 Bl. Com. 141. This definition, without substantial change of phraseology, has been adopted in the Pennsylvania decisions. An essential element of the offense, and one to which particular attention should be directed in this case, is that the fee or reward must be taken by the officer by color of his office. Here, the allegation of the indictment is that the defendant took it "by color of his office as such coal and iron police," and this is the allegation that it was incumbent on the commonwealth to prove. Amongst the judicially recognized definitions of color of office, applying to the differing states of facts that may arise, are: a pretense of official right to do an act, made by one who has no such right; the use of official authority as a pretext or cover for the commission of some corrupt or vicious act; an

act wrongfully done by an officer under the pretended
authority of his office: 7 Cyc. of Law & Pro. 401; Com.
v. Wilson, 30 Pa. Superior Ct. 26.   The last definition
furnishes the test to be applied here.   As already in-
timated, the omission from the special verdict, of a find-
ing in the exact technical language of the indictment,
that the defendant took the fees "by color of his office
as such coal and iron police," is not a fatal defect.   But
so important a matter as this, which distinguishes a
merely unlawful act from a criminal one, should not be
left to be inferred by the court from facts which are con-
sistent with the inference of innocence.   Hence, in the
absence of such specific finding by the jury, it is ab-
solutely essential that the special verdict should state
the facts, from which the legal conclusion must neces-
sarily be drawn, not only that the defendant was pro-
hibited by statute or rule of public policy from taking
the fees, but also that he took them by color of his
office.   As to the second branch of this proposition, we
think the verdict is substantially defective, and the fol-
lowing considerations, tending to support this conclu-
sion, may appropriately be mentioned: The fees taxed
in favor of and paid to the defendant were not exces-
sive, the services for which they were charged might
have been rendered by a private individual (McClain v.
Lawrence Co., 14 Pa. Superior Ct. 273), and there is
nothing to show that the defendant was acting, or claim-
ing to act, otherwise in rendering them.   True, he was a
coal and iron policeman at the time; but it does not
appear that the process he was called upon to serve was
directed to him in that capacity or delivered to him be-
cause he was such officer.   Nor does it appear that he
rendered the services at the instance of the coal com-
pany, or in its behalf, or that the company had any
interest, near or remote, in the prosecution of the cases.
For aught that appears, the services may have been ren-
dered when he was not on duty as a coal and iron police-
man, in a part of the county remote from the territory

where the coal company's property was situated and its operations carried on, and in a matter which in no manner whatsoever pertained to his office or duties as a policeman. Another point to be noticed is, that the compensation of the defendant as a coal and iron policeman was the subject of an agreement between him and the company, and there is nothing in the special verdict to show that the agreement expressly covered, or that the parties intended or expected the agreed compensation to cover, extra official services in matters which in no way concerned the company or its property and which he could perform without in any manner interfering with his duties as a coal and iron policeman. Special findings as to these matters might have put a different aspect on the case. But, taking the special verdict as it stands, our conclusion is, that an essential element of the crime of extortion is lacking, namely, that the defendant took the fees by color of his office as a coal and iron policeman. It follows that the judgment should have been that he was not guilty.

The judgment is reversed and the defendant is discharged.