Commonwealth *v.* Fahey et al., Appellants.

Argued September 25, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*E. F. McGovern* with him *H. L. Pace,* for appellants.

*Louis Shaffer,* with him *Max Rosenn,* Assistant District Attorneys, and *Leon Schwartz,* District Attorney, for appellee.

OPINION BY RHODES, J., December 13, 1944:

Appellants, School Directors of the School District of Jenkins Township, Luzerne County, were convicted on two counts of an indictment charging wilful misbehavior or misfeasance in office.

The first count of the indictment charged appellants with wilfully, wrongfully, maliciously, and unlawfully misbehaving themselves in office, in that they unlawfully and wilfully purchased from Joseph Jackson, for the School District of Jenkins Township, certain heating stokers and equipment connected therewith involving a sum over $300, to wit, the sum of $11,120, the said Joseph Jackson not being the lowest bidder, and no contract for said purchase, in writing, having been signed and executed in the name of the school district, and no public notice having been given asking for competitive bids. In the second count of the indictment appellants were charged with wilfully, wrongfully, maliciously, and unlawfully misbehaving themselves in office, in that they unlawfully and wilfully ordered,

sanctioned, directed, and recommended, at a meeting of the school board of the said school district, and caused to be made payment of the sum of $11,120 to Joseph Jackson for said heating stokers and equipment.

The case was tried before VALENTINE, P. J., and, the jury having found them guilty, appellants moved to arrest judgment and for a new trial. Both motions were denied. The court sentenced appellants as follows: Fahey and Nowak, secretary and president of the board, respectively, each to pay a fine of $100, and undergo imprisonment in Luzerne County prison for a term and period of one year; King, the treasurer, and Nauyokas each to pay a fine of $100, and undergo like imprisonment for a term of six months; Waxmonsky to pay a fine of $100, and to undergo like imprisonment for a term of six months, and be removed from the office of school director. This appeal followed.

The evidence presented established certain material facts. The five appellants were, during the year 1941, school directors of the School District of Jenkins Township, a third class school district. On April 30, 1941, at a special meeting of the board of school directors, a motion was passed that the board advertise for bids on repairs to plumbing and heating in the school buildings known as Inkerman, Memorial, Port Griffith, and Sproul; the bids were to be opened at the regular meeting on June 10, 1941. Appellants voted affirmatively on that motion. The advertisement, which was inserted in the newspapers, called for proposals on only two of the buildings, to wit, the Memorial and Inkerman. The advertisements asked for "proposals for furnishing all necessary labor, equipment, and material for improvement to the heating and ventilating system at the Memorial and Inkerman school buildings." At the regular meeting of the board, on June 10, 1941, two bids having been submitted they were opened and referred to the finance committee for tabulation. At that meeting a motion was passed that no more bids be

received "on heating alteration to the Inkerman and Memorial, Sproul and Port Griffith school buildings." Appellants voted affirmatively on that motion. A bid from R. A. Davis for four stokers was in the amount of $7,100. His price for five stokers would have been approximately $9,000. The bid from Joseph Jackson, a plumbing and heating contractor, for two stokers for the two buildings advertised was in the amount of $4,860; he submitted no bid for the installation of the remaining three stokers. On June 24, 1941, at a special meeting of the board, a motion was passed "that Joseph Jackson be granted a contract to furnish stokers for the Inkerman and Memorial buildings for a price of $4,860 and for the Sproul and Port Griffith buildings for a price of $6,260, and the proper officers be authorized to issue checks in accordance with the contract." Appellants were present at the meeting and voted affirmatively. On June 25, 1941, the day after the meeting awarding the contract to Jackson, a written contract was entered into between Jackson and the school district covering the installation of the two stokers in the Memorial and Inkerman buildings. The stokers were accordingly installed in those buildings in August, 1941, and, before installation, Jackson was paid therefor the sum of $4,860—$1,950 on July 9, 1941, and $2,910 on August 14, 1941. From the amount paid he returned to two of the appellants, Fahey and Nowak, the sum of $1,350. Subsequently, in December, 1941, Jackson installed the three additional stokers in the Sproul and Port Griffith buildings, and received in payment therefor $6,260—$3,660 on November 18, 1941, $2,100 on December 18, 1941, and $500 on December 29, 1941. From these payments Jackson gave to Fahey and Nowak the additional sum of $3,460. There was no written contract for these three stokers; there was no bid submitted for the installation thereof; and no competitive bids were sought. All of the appellants except Waxmonsky had been removed from office by order of the

Court of Common Pleas of Luzerne County.

Appellants' first contention is that they were not indictable under the common law. This position was submitted to the court below, and properly rejected. They rely on *Com. v. Peoples et al.*, 345 Pa. 576, 579, 28 A. 2d 794. It was there held that misfeasance in office is not indictable under the common law "where a remedy is provided or duty enjoined, or anything directed to be done by the penal provisions of any act of assembly," unless necessary "for carrying such act into effect": Penal Code, Act of June 24, 1939, P. L. 872, §1104, 18 PS §5104. Consequently, their theory is that the misbehavior in office, with which they were charged in the indictment, consisted of a failure to perform the mandatory duties of the School Code as set forth in Act of May 18, 1911, P. L. 309, art. 6, §617, as amended, 24 PS §763,[1] and that for such an offense a specific remedy is provided by section 217 of the Code, 24 PS §180, which reads in part as follows: "If the board of school directors in any district of this Commonwealth shall fail to organize ...... or refuse or neglect to perform any duty imposed upon it by the provisions of this act ...... the ...... court shall have the power to remove said board, or such of its number as in its opinion is proper." The court below in its opinion adequately disposed of this argument: "Neglect of duty is one thing, wilful misconduct in office is something different. The former

---

[1] This section provides that where the entire cost, value, or amount of construction, reconstruction, repairs, or work, including labor and material, shall exceed $300 in school districts other than school districts of the first class, the same shall be done under contract or contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids, and that where the amount of the contract is in excess of $500 the school district shall require an additional bond conditioned for the prompt payment of all material furnished and labor supplied or performed in the prosecution of the work.

may result from ignorance, carelessness or mistake, the latter is intentional and deliberate. The penalty of removal for the former, which is provided for by the School Code [section 217, 24 PS §180] does not preclude prosecution for the latter." The indictment clearly charged appellants with wilful misconduct in office. *Com. v. Hubbs (No. 2)*, 137 Pa. Superior Ct. 244, 248, 8 A. 2d 618. In the absence of an applicable penal provision of an act of assembly the common law was not abrogated.

In *Com. v. Rosser et al.*, 102 Pa. Superior Ct. 78, at page 88, 156 A. 751, at page 755, which involved an analogous situation under the Act of June 27, 1895, P. L. 403, §10, as amended by the Act of April 7, 1927, P. L. 176, 16 PS §1427, we said: "This statute [Act of April 15, 1834, P. L. 537, §24, 16 PS §1340] provides for the neglect or refusal of the commissioners of a county to perform any duty required of them by law. This indictment was drawn under and the defendants are subject to the penalty imposed by the common law and charges a wilful misconduct, which is a different offense from that provided for in the 1834 statute, and therefore it does not govern this case."

The sufficiency of the evidence to sustain the convictions of three of the appellants, King, Nauyokas, and Waxmonsky is questioned. The evidence which the Commonwealth submitted was sufficient for the jury to conclude that the acts of these appellants, as well as the other two, were wilful, intentional, and deliberate. The credibility of their explanation was for the jury under all the circumstances. They must have known that the contract was not awarded to the lowest responsible bidder, that there was no proposal by Jackson for the three stokers, that the only proposal related to the installation of the first two stokers, that the advertisement referred to two buildings, that there were no advertisements for bids for the three stokers, and that no performance bond was required for the installation of any

of the stokers. Although these appellants may not have received any moneys from Jackson, they were chargeable with knowledge that checks were given to Jackson in advance of delivery and installation. King signed the checks as treasurer. Nauyokas and Waxmonsky also were fully aware of the nature of the transaction, as a result of the method followed at the meeting on June 24, 1941, in awarding the contract for five stokers to Jackson who had obviously not submitted the lowest bid for the two stokers, and who had submitted no bid at all for the three additional stokers. We think the charges in the indictment were adequately sustained by the proofs.

Appellants' further contention is that Jackson was an accomplice, and that the trial judge should have so instructed the jury, with the usual precaution applicable to the evidence of accomplices, although no such request for charge was made. This point was not raised in the court below, nor is there any basis for it here. Appellants were charged with wilful misbehavior in office, and there is nothing in the record which makes Jackson an accomplice with them in that crime. *Com. v. Minker,* 81 Pa. Superior Ct. 42, 45. As to the testimony of Jackson, appellants were adequately protected. The trial judge instructed the jury to consider the manner in which the testimony of the witnesses was given, the interest which any witness might have in the case or in its outcome, and to what extent any witness was corroborated by the documentary evidence. In any event, this instruction was all that was required in the absence of a specific request, as, in our opinion, there was some corroboration by documentary evidence of this witness. See *Com. v. Manuszak et al.,* 155 Pa. Superior Ct. 309, 312, 38 A. 2d 355.

We find no merit in the third assignment of error which complains of that part of the sentence removing appellant Waxmonsky from the office of school director.

The argument in support thereof is predicated on the statement in *Fudula's Petition,* 297 Pa. 364, at page 367, 147 A. 67, at page 68, where it is said: "Each official term is a separate entity and a citizen whom the electors have chosen to a public office cannot be deprived thereof because of nonperformance or misperformance of duty in some other office or during a prior term of the same office." Waxmonsky had been appointed a school director on March 22, 1941; he was elected in November, 1941, and the term began on the first Monday of December, 1941. The three stokers were not received by Jackson or installed until the beginning of this appellant's elective term. The check of December 18, 1941, in the amount of $2,100, was given to Jackson before receipt of the stokers. The last payment was made by the school district on December 29th. It was appellant's duty to know what was going on. His failure in this respect constituted at least a dereliction of duty committed during his elective term, and justified his removal. See, also, *Com. ex rel. v. Davis,* 299 Pa. 276, 149 A. 176; *Com. v. Rosser et al.,* supra, 102 Pa. Superior Ct. 78, 88, 156 A. 751; Constitution of Pennsylvania, art. 6, §4.

There was only a general exception taken to the charge of the court. The trial judge complied with all requests for additional instructions. We find no basic or fundamental error in the charge, and the complaints made relative thereto are devoid of any merit.

All of the assignments of error are overruled, and the judgment and sentences are affirmed and it is ordered that the defendant in each appeal appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.