## Commonwealth *v.* Ackerman, Appellant.

Argued April 12, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*Marjorie H. Matson,* with her *Harry S. Kalson,* for appellant.

*Samuel Strauss,* with him *Wendell G. Freeland,* Assistant District Attorneys and *James F. Malone, Jr.,* District Attorney, for appellee.

OPINION BY HIRT, J., July 13, 1954:

The defendant Alfred J. Ackerman was the Justice of the Peace in the Borough of Whitaker, Allegheny County. Eighty indictments against him were consolidated for trial before the same jury. In the indictments there were thirty charges of Cheating by Fraudulent Pretenses, eight charges of Extortion, forty charges of Misdemeanor in Office, one charge of violation of the Motor Vehicle Code and one charge of Conspiracy. The jury found the defendant guilty on fifty-seven of the charges, and returned verdicts of not guilty on eighteen indictments. There were four charges in which demurrers were sustained; one charge was nolle prossed. J. B. Bolden a deputy constable and co-defendant in the conspiracy and other charges was tried before the same jury upon twenty-six indictments and was convicted on all of the charges. The matter came before the lower court on motions in arrest of judgment and for a new trial on behalf of defendant Ackerman. Similar motions on behalf of Bolden were withdrawn.

At the argument before the court en banc only the motion for a new trial was stressed. FRANK GRAFF, P. J., who, specially presiding, tried the case, discussed the reasons advanced by the defendant in a comprehensive opinion and, speaking for the court en banc, refused a new trial. Sentence of imprisonment in the Allegheny County Jail for a term of two years was imposed on defendant's conviction of Misdemeanor in Office on Bill 162; it was "further ordered and directed that defendant be and is hereby removed from the Office of Justice of the Peace of Whitaker Borough". Sentences were also imposed on each of the defendant's convictions on

Bills 293, 165, 130, 122, 41 and 53, in no instance for a term of imprisonment of more than two years, all to run concurrently in the county jail with the sentence imposed at No. 162 May Sessions 1953. Sentence on the conviction of defendant in every other case was suspended.

Prior to trial the defendant Ackerman had moved to quash 42 indictments charging misdemeanor in office, for the reason that under §1104 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §5104, one may not be indicted for the common law offense of misdemeanor in office when he is also indicted for a specific offense under the Criminal Code, upon which the charge of misdemeanor is founded. After argument before a court en banc, the motion was refused. The court's reason for the refusal, as stated by BRAHAM, P. J., specially presiding as a member of the court en banc, was that in each instance the common law charge was broader than the charge of the statutory offense and on that ground it was held that both may stand. The opinion cites *Com. v. Falls & Sykes,* 107 Pa. Superior Ct. 129 and *Commonwealth v. Yerkes,* 86 Pa. Superior Ct. 5 in support of the principle that where misdemeanors are of equal rank and the proof of one involves one more fact than another there is no merger of the offenses.

In the present appeals the defendant contends that consolidation of the indictments with the charges against Constable Bolden and the trial of all of them before the same jury deprived him of due process of law, in violation of the Constitution of the United States and of this Commonwealth. He also questions three of the convictions of Misdemeanor in Office on the ground alleged that the acts charged in the indictment, as proven at the trial, constitute statutory offenses. In other cases here on appeal it is contended that the defendant's guilt is not established by the proofs.

There can be no difference of opinion as to what constitutes a denial of due process in the trial of one accused of crime: "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice": *Lisenba v. California*, 314 U. S. 219, 62 S. Ct. 280. " 'Due process of law' . . . means a course of legal proceedings according to those rules and principles which have been established . . . for the protection and enforcement of private rights": *Commonwealth v. O'Keefe*, 298 Pa. 169, 148 A. 73; *Commonwealth v. Strada*, 171 Pa. Superior Ct. 358, 90 A. 2d 335. But the question, where consolidation of cases is involved, is not to be answered by a mere reckoning of the number of the total charges submitted to a single jury. Something more is involved. *Cf. Commonwealth v. Quinn*, 144 Pa. Superior Ct. 400, 19 A. 2d 526, in which fifty indictments against three defendants were properly consolidated for trial, and *Commonwealth v. Reilly*, 125 Pa. Superior Ct. 340, 189 A. 768, where 61 bills were submitted to the same jury. The general rule has been thus stated: "In the absence of substantial prejudice to accused, the court in its discretion may generally consolidate or try together two or more indictments involving *similar or connected* offenses.": 23 C.J.S., Criminal Law, §931, (emphasis supplied). To the same effect is our statement of the principle in this language: "It is the settled rule that the consolidation of indictments, charging separate and distinct offenses is largely a matter within the sound discretion of the trial court, and where the indictments are closely related, his exercise of discretion will not be reversed unless it is clearly shown that the appellant has been prejudiced or injured thereby": *Commonwealth v. Lehman*, 166 Pa. Superior Ct. 181, 183, 70 A. 2d 404. The rule has been uniformly applied. *Cf. Commonwealth v.*

*Kaysier,* 166 Pa. Superior Ct. 369, 71 A. 2d 846; and *Commonwealth v. Roberts,* 161 Pa. Superior Ct. 548, 55 A. 2d 577.

The charges in these cases arose out of misconduct of the defendant in the administration of his office as Justice of the Peace in the Borough of Whitaker over a period of a year and one-half. Some 6,600 cases passed through his office as Justice during the period, but the actual investigation of irregularities related to only 200 cases brought before the defendant. Judge GRAFF in the opinion for the court en banc states: "Whitaker Borough is a relatively small community, and many of the cases in his office were brought there by officers from other districts in Allegheny County. Of the cases which were tried, a great number were brought from the Hill District of the City of Pittsburgh, by Deputy Constable J. B. Bolden, from his district."

All of the indictments involved similar or connected offenses. The proofs indicate that each of the defendant's unlawful acts was plainly a part of a general course of conduct in the taking of excessive fees, the collection of costs to which he was not entitled, or the extortion of unlawful payments from litigants, by a variety of means. Cf. *Commonwealth v. Reilly,* supra. And in the conspiracy charge against him with Constable J. B. Bolden, the alleged conspiracy consisted in a common purpose and design to cheat and defraud the County of Allegheny by the collection of moneys as costs from the County or from persons which were not due them. While the crimes charged were separate offenses, they either grew out of the alleged conspiracy or otherwise were closely related. Ordinarily the trial judge can best determine whether even a large number of bills of indictment may be consolidated without prejudice to the defendant, and we may not reverse except on a clear showing of an abuse of discretion. Cf.

*Commonwealth v. Mulroy,* 154 Pa. Superior Ct. 410, 413, 36 A. 2d 337; *Commonwealth v. Tracey,* 137 Pa. Superior Ct. 221, 8 A. 2d 622.

There was no abuse of discretion in the consolidation of the cases for trial and there was no denial of due process on other grounds in these cases. The jurors were examined on their voir dire, and an impartial jury when sworn was sequestered, for their protection from outside influences. Throughout the trial the rights of the defendant were meticulously respected, and in submitting the cases to the jury Judge GRAFF in an orderly charge reduced the charges to their simplest terms. At the outset the jury was carefully instructed as to the elements of proof necessary to establish conspiracy, extortion, false pretense and misdemeanor in office and as each case was submitted the character of the offense was again stated and the contentions of both the Commonwealth and the defendant were outlined.

The charges of the eighty bills involved only 37 different factual situations. The indictments were logically grouped by the trial judge and were submitted under file numbers. The grouping of indictments in appropriate classifications in the various files were also taken advantage of by the District Attorney and counsel for defendant at the trial. Each file contained a number of indictments together with all of the exhibits relating to the charges, and verdict blanks for the convenience of the jury. The discrimination exercised in disposing of the charges indicates rather clearly that the jury was not confused and the defendant was not prejudiced by the consolidation of the indictments.

The defendant appealed in 71 April Term, 1954 from a conviction and sentence on Bill 165 charging him with misdemeanor in office. The charge in effect is that, from an ulterior motive to create costs which he could collect from the County under color of right, appellant

induced one Marvin Cathcart to bring criminal prosecutions based solely on facts indicating civil damages. The indictment recites that Vander Gaddy, a minor son of Arsie Gaddy, while driving his father's car, injured Cathcart and damaged his automobile in a collision with it. The indictment charges that the defendant Ackerman well knowing that Arsie Gaddy was not the operator of the automobile involved in the accident nevertheless did corruptly induce him "to institute criminal proceedings and to sign informations against the said Arsie Gaddy and the said Vander Gaddy charging the criminal offense of assault and battery with an automobile as a result of said accident aforesaid, causing the arrest of said Arsie Gaddy and Vander Gaddy." The indictment further charged that at the time of hearing, the criminal prosecutions were discharged and that subsequently Ackerman, as Justice made a return thereof to the Controller of the County of Allegheny for the payment of costs and did fraudulently and corruptly collect a total of $12.60 as his costs from the county in the two proceedings.

Contrary to appellant's contention, the testimony in the Gaddy case supports a conviction on the charge. It was a fair inference for the jury that appellant invited the bringing of groundless criminal charges as a means of collecting costs to which he was not legally entitled. Marvin Cathcart testified that after his automobile was demolished by a car driven by Vander Gaddy, the boy's father, Arsie Gaddy, at the police station promised to make good the damage. When he failed to perform his agreement, Cathcart consulted "two well-known Magistrates on the Hill" but they refused to handle his case. His lawyer also advised him that his only remedy was by civil action. He nevertheless then discussed the matter with Constable J. B. Bolden who took him to Justice Ackerman's office. He there signed

an information in blank naming the father Arsie Gaddy as the defendant. At the time set for hearing on that information when it appeared that it was the son, Vander Gaddy, who drove the car, that proceeding was abandoned and Cathcart in the presence of appellant signed a second information charging the son with the offense of assault and battery by automobile. At the hearing on the second charge against the son, Cathcart testified that the appellant Ackerman then stated that he would commit the father, Arsie Gaddy, to jail if he failed to make good the damage. After a conference between Cathcart and Arsie Gaddy, which was suggested by appellant, an agreement was entered into by them as to the payment of Cathcart's civil damages whereupon the appellant said he would hold the case open "until payment should be made." Arsie Gaddy testified that he knew that the charge against his son was assault and battery and that he appeared at Justice Ackerman's office pursuant to notice from Constable Bolden; that he there agreed with Cathcart to replace his automobile which had been demolished in the collision. He further testified that no disposition was made of the criminal charge and that the case is still open to the best of his knowledge. There is in the record an offer of the Commonwealth to disregard the testimony of Cathcart. The appellant's counsel however did not agree to its elimination, stating: "We want the testimony". Cathcart's testimony therefore is a part of the proofs before us in this appeal. Exhibit 51-C, admitted in evidence, contains a transcript of a purported original complaint against Arsie Gaddy charging him with aggravated assault and battery *with a club* upon which Ackerman as Justice recovered costs in the sum of $6.30 from Allegheny County. Exhibit 51-D, also in evidence, contains a transcript of the complaint against Vander Gaddy upon which appellant collected $6.30

costs in the proceedings against him. Costs in the total amount of $14.10 were also collected from the county for Constable Bolden in the two proceedings.

Appeal 73 questions the sufficiency of the proofs to sustain the charge of extortion in 122 May Sessions, 1953, in which appellant was convicted and sentenced. A charge of Assault and Surety of the Peace had been brought by Isaac Brown against Early Taylor. The information was signed on January 20, 1951, in Ackerman's office. On the same day Ealon Bonner filed the same charge against Ruth Taylor. Both alleged offenses grew out of the same neighborhood dispute and were consolidated for hearing before appellant. He discharged the defendant Early Taylor and collected a total of $22.10 as costs in that case, from the county. In the second case, appellant imposed the costs on the defendant Ruth Taylor. The same services were rendered and the costs, if any, to which appellant was entitled were the same in both cases. The costs exacted in the Ruth Taylor case were $38.00. Even if entitled to costs in both cases, and we need not decide that question, the amount collected from the county in the one case fixes the amount of the costs to which appellant was entitled in the other and the excessive costs collected in the Ruth Taylor case sufficiently supports the charge of extortion.

In appeal 72 defendant Ackerman was likewise convicted and sentenced in 130 May Term, 1953, on a charge of Extortion. The evidence is clear that on a charge against Conway Brown, Ackerman as Justice imposed the costs on him and exacted $53.40 which was far in excess of costs allowable by law.

Ackerman appealed in number 74 from his conviction and sentence in 41 May Sessions, 1953, on a charge of defrauding the County of Allegheny by False Pretenses. One Parks signed a blank information charging

Junius Austin with aggravated Assault and Battery. At the hearing held on June 29, 1952, Ackerman as Justice ordered Austin to reimburse Parks for hospital and doctor bills paid by him and he also ordered Austin to pay the costs. On February 6, 1952, appellant collected costs from the county on a false transcript of the case in the sum of $8.05 notwithstanding the fact that he had previously put the costs on the defendant Austin. Admittedly Austin paid Ackerman a total of $134 against the prosecutor's total medical expense of $114. The excess of $20 was retained by the appellant as costs and the double collection of costs adequately supports the charge. The appellant does not deny the collection of double costs in this prosecution but relies on the technical objection that the proof of the date of the offense varied from that set forth in the indictment. There is no merit in the contention since time was not of the essence of the offense and it was not necessary to prove commission of the offense on the date laid in the indictment inasmuch as the proofs establish a date within the statutory period. *Commonwealth v. Ryhal,* 274 Pa. 401, 118 A. 358; *Commonwealth v. Weiss,* 284 Pa. 105, 130 A. 403.

Appeal number 69 from 162 May Sessions 1953, appeal 70 from 293 March Sessions, 1953, and appeal 71 from 165 July Sessions, 1953, all involve convictions of the common law offense of Misdemeanor in Office. The indictments in these cases also charged specific offenses made misdemeanors by the provisions of Sections 1205-1207 of the Motor Vehicle Code of May 1, 1929, P. L. 905, 75 PS §§735, 736, 737. Under §1104 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §5104, there may not be an indictment for a common law crime where the legislature has made the Act a statutory offense and has imposed a penalty. In appeals 69 and 71 the charges and the proofs of misdemeanor in

office were broader than the statutory offense and there was no merger for that reason. In 293 March Term, 1953, the proofs established no more than violations of the Motor Vehicle Code made a misdemeanor punishable by fine and imprisonment for 60 days. A penalty was imposed, on the general verdict of two years imprisonment. Defendant is entitled to a new trial on this indictment and if the case is retried the Commonwealth will be obliged to elect to proceed on the statutory charge alone.

We find no merit in any of the other appeals from the convictions and sentences in the court below. In the imposition of concurrent sentences the defendant was treated most leniently.

The judgment and sentence in the appeal number 70 April Term, 1954 is reversed and a new trial awarded. In all other appeals the judgments of sentences are affirmed and it is ordered that the defendant appear in the court below when called and that he be committed until he shall have complied with the sentences or any part of them which had not been performed when the appeal in each of these cases was made a supersedeas.