421 A.2d 271

**COMMONWEALTH of Pennsylvania,**

v.

**Isadore H. BELLIS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed July 11, 1980.

Petition for Allowance of Appeal Granted March 13, 1981.

5. Taken with approval from Commonwealth's Brief, pages 8–9.

John Rogers Carroll, Philadelphia, for appellant.

Bernard L. Siegel, Deputy District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, HESTER and WATKINS, JJ.

WATKINS, Judge:

This appeal comes to us from the Court of Common Pleas, Criminal Division, and involves the defendant–appellant's appeal from his convictions of the common law crimes of misfeasance, malfeasance, and nonfeasance in office. Defendant had been charged with conspiracy, extortion and the common law crimes. He was acquitted of the conspiracy and extortion charges. Defendant was tried first in the Municipal Court of Philadelphia County and then appealed his conviction for a de novo trial before the Court of Common Pleas of Philadelphia County. He was tried before a jury and convicted of the common law crimes on March 4, 1977. On September 28, 1977, defendant was sentenced to a term in prison of two (2) to seven (7) years and fined $9,000 plus the costs of prosecution. He now appeals his conviction of the common law crimes.

At defendant's trial it was established that the defendant was an elected member of the City Council of Philadelphia and its majority leader. It was also established that one John Betts was an architect who was interested in obtaining contracts for design work for buildings at the Philadelphia International Airport. At this time one Joseph Daly was an assistant to the Treasurer of Philadelphia Democratic City Committee. Bellis was a member of the Democratic Party, the majority political party in Philadelphia.

In May, 1971, Betts was invited to lunch by Bellis at the Locust Club in Philadelphia. Bellis had told Betts that he wanted Betts "to meet some people from downtown" which Betts understood to mean that he was to meet some people from the Democratic City Committee. This meeting was initiated by Bellis according to Betts' testimony. Bellis also invited Daly to the same lunch. At this time Bellis knew Daly, knew of his position in the Democratic Party, and had known him "long before he had anything to do with anybody at City Committee". At the time of the lunch meeting Daly "was aware that Betts was involved in planning of an airport structure at the International Airport . . . through . . . the grapevine."

During the lunch meeting Bellis left the table. At that point Daly and Betts began discussing Betts' work at the airport. They discussed the amount of the budget for the contract, Betts' fee, and how the work was proceeding. The fee was not to exceed $180,000. Daly then told Betts that it was "customary for architects to give 5% of their fee to the Democratic City Committee". Betts immediately agreed to do this. No details of the pay–off were discussed at that time, Bellis returned to the table, and no further discussion of the contracts took place at that time.

In June of 1971, Betts received a design contract for $5,000. On or about June 28, 1971, Bellis called Betts and requested Betts to give "them some money at this time". Bellis told Betts that he should give "us" $4,000. On June 29, 1971, Betts went to the Philmont Country Club were he gave Bellis an envelope containing $4,000 in cash. Bellis

placed the envelope into his pocket. In October of 1971, Betts received the final contract with the City for an additional fee of $175,000.

On July 26, 1972 Bellis phoned Betts and requested an additional $5,000 "contribution" and on July 27, 1972 Betts gave an envelope containing $5,000 to Bellis at the Stouffer Restaurant in downtown Philadelphia bringing the total amount given to Bellis by Betts to $9,000. The cash payments of $9,000 made to Bellis amounted to 5% of the $180,000 engineering design contract fee.

On April 2, 1975, Bellis and Betts had a conversation during which Betts told Bellis that Betts had been informed that there was no record of Betts' giving a donation to the Democratic City Committee. Bellis told Betts that the money had been "spread around the party". It was also established that the Philadelphia City Council had the "final say" as to what was to be approved for capital improvements at the airport.

Defendant's first argument on appeal is that his convictions of the common law crimes should be reversed because of the existence of specific statutory crimes which deal with the conduct of which the defendant was charged. As authority for this proposition the defendant cites former *18 P.S. § 5104* which provides that:

> "In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect." [1]

Thus, if the defendant's actions amount to violations of statutory criminal enactments his convictions of the common law charges of misfeasance, malfeasance, and nonfeasance in office cannot be sustained.

1. This section was repealed by the *Act of December 6, 1972, 18 Pa.C.S.A. § 105.*

Misfeasance in office is "either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive". *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942). Malfeasance in office has also been defined as the "breach of a positive statutory duty or the performance of a discretionary act with an improper or corrupt motive." *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936). Thus, it is clear that the terms malfeasance in office and misfeasance in office are often used to describe the same conduct or at best two different modes of committing the same offense. *Commonwealth v. Dolny*, 235 Pa.Super. 241, 342 A.2d 399 (1975). We will, therefore, use the terms interchangeably.

In *Commonwealth v. Dolny*, supra, we held that a defendant may be convicted of malfeasance and nonfeasance in office although he is acquitted of bribery and conspiracy because the crime of bribery does not proscribe the same conduct as the common law offenses of misfeasance, malfeasance and nonfeasance in office. We held that the reason for this was because a conviction of bribery may only be sustained where the evidence establishes that the offender accepted or agreed to accept a monetary payment for his action. The common law offenses of which defendant was convicted require only that the actor have an "improper or corrupt motive". This analysis is applicable to the instant case which involved a statutory charge of extortion rather than bribery because the charge of extortion (former *18 P.S. § 4318*), as is the case of the crime of bribery, required that the actor receive, take, or agree to receive a "fee or reward" for his conduct which "fee or reward" was not established by law. Thus, it would appear at the outset that the distinction between the statutory crimes of bribery and extortion, on the one hand, and the common law crimes of misfeasance, malfeasance and nonfeasance in office, on the other hand, is the fact that the former (statutory offenses) require, as an element of the offense, that the defendant improperly received or agreed to receive some monetary payment or other "reward" in return for his conduct while in the latter

(common law crimes) all that is required is that the actor be motivated by an "improper" or "corrupt" motive.

However, in the case of *Commonwealth v. Bellis*, 484 Pa. 486, 399 A.2d 397 (1979), the Supreme Court reversed the defendant's conviction of the offenses of malfeasance, misfeasance, and nonfeasance in office, citing former *18 P.S. § 5104* (of the former penal code, *1939 Penal Code, Act of June 24, 1939, P.L. 872, Sec. 1104*). In that case the defendant was *convicted* of bribery and the common law crimes. The Supreme Court reversed the convictions on the common law crimes but affirmed the bribery conviction. The Commonwealth attempts to distinguish that case from the instant case by pointing out that in our case the defendant was found *not guilty* of extortion (which we have found to be analogous to the crime of bribery for our purposes here as discussed above) and guilty of the common law crimes. This, the Commonwealth argues, strongly indicates that no statutory remedy did in fact exist which was co–extensive with the common law crimes. A close analysis of that opinion, however, reveals no such rationale advanced therein. The Court in that case merely held that since a statutory penalty existed for defendant's misconduct *Section 5104* precluded conviction for the common law offenses. The Court stated in its opinion:

> "Appellant's fourth contention is that he is not guilty of malfeasance on the grounds that his aforementioned misconduct could only be punished under Section 4667 (the bribery statute) and not under the common law. We agree with this contention."

The Court then went on to cite *Section 5104*, discussed that section's application to the case of *Commonwealth v. Peoples*, supra, and reversed defendant's conviction of malfeasance, misfeasance, and nonfeasance in office. In so doing, the court stated that: "A statutory penalty (Section 4667) exists for appellant's misconduct; therefore, pursuant to Section 5104, appellant cannot be punished for his misconduct based in a violation of the common law (malfeasance)." *Commonwealth v. Bellis*, supra. We interpret this holding

to mean that *if* the defendant could have been convicted of the statutory offense, consistent with the facts adduced during the trial of the case, then he could not also be convicted of the common law offenses. Whether or not he *was* in fact convicted of the statutory offenses does not matter. In the instant case the facts adduced at the trial were sufficient to enable a jury to convict the defendant of extortion. The evidence reveals that the defendant did in fact personally receive $9,000 in improper cash payments from Betts. The fact that no record of the Democratic City Committee having received this money exists, and that defendant took his wife on a trip to Europe soon after receiving the first $4,000 payment on July 1, 1971, coupled with the fact that it was the defendant, himself who received the payment was certainly sufficient evidence to permit the jury to find that defendant had, in fact, improperly received the money. Therefore, because a statutory offense and *not* under the common law according to the holding of *Commonwealth v. Bellis*, supra. For that reason we reverse defendant's conviction for malfeasance, misfeasance and nonfeasance in office.[2]

Judgments of sentence reversed; defendant discharged.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I agree that appellant must be discharged, but as my reasons differ from the majority's I submit this separate opinion.

Following appellant's conviction in Municipal Court of misbehavior in office and his appeal to the lower court for a trial de novo, the Commonwealth filed an information consisting of two counts. The first count charged appellant with misbehavior in office in connection with the $4,000 payment he received from John Betts on June 29, 1971; the

---

**2.** The *Act of December 6, 1972, No. 334, Section 1, (18 Pa.C.S.A. § 107(b), effective June 6, 1973),* abolished common law crimes by providing that: "No conduct constitutes a crime unless it is a crime under this title or another statute of the Commonwealth."

second count charged the same offense in connection with the $5,000 payment appellant received from Betts on July 27, 1972. The Commonwealth subsequently filed a bill of particulars informing appellant that he was charged with these offenses because he 1) breached the "[d]uties imposed upon public officials under the Philadelphia Home Rule Charter, Title 351, Pennsylvania Code § 1.1–100 et seq.," specifically those duties set forth in section 10.10–100; 2) "deliberately conveyed the impression to John Betts that he, the defendant, could influence the awarding of a contract regarding the International Terminal at the Philadelphia International Airport"; 3) "deliberately gave the impression to John Betts that he, John Betts, was making a political contribution on two occasions"; and 4) "gave John Betts reason to believe the Joseph Daly was acting as defendant's agent at a meeting at the Locust Club where political contributions were discussed between Joseph Daly and John Betts." [1]

The majority outlines the salient points of the Commonwealth's proof. Viewing that proof in the light most favorable to the Commonwealth, and giving the Commonwealth the benefit of all inferences reasonably arising therefrom, *Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980); *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979), I believe the jury was entitled to find that the Commonwealth had proved the allegations set forth in the bill of particulars. The question remains, however, whether that proof constituted proof of misbehavior in office.

1. The Commonwealth was restricted at trial to proving that appellant was guilty of misbehavior in office because of the acts thus set forth in the bill of particulars, and not because of other acts. *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972); *Commonwealth v. Russell*, 261 Pa.Super. 151, 395 A.2d 1365 (1978); *Commonwealth v. Bartman*, 240 Pa.Super. 495, 367 A.2d 1121 (1976).

It may be noted that although the bill of particulars also alleged that appellant was guilty of misbehavior in office because he breached the duties set forth "in the Pennsylvania Crimes Code of 1939, specifically that portion dealing with Extortion, 18 P.S. § 4318," and set forth in section 10.10–107(3) of the Philadelphia Home Rule Charter, the Commonwealth abandoned these claims at trial.

In *Commonwealth v. Steinberg*, 240 Pa.Super. 139, 149–50, 362 A.2d 379, 385 (1976), this court discussed the nature and elements of the offense of misbehavior in office, as follows:

The offense of malfeasance, misfeasance or nonfeasance in office, more commonly called misbehavior in office, is a common law misdemeanor. *Commonwealth v. Evans*, 190 Pa.Super. 179, 154 A.2d 57 (1959), *aff'd mem.*, 399 Pa. 387, 160 A.2d 407, *cert. denied*, 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 193 (1960); *Commonwealth v. Mecleary*, 147 Pa. Super. 9, 23 A.2d 224 (1941). The offense has been carefully defined by the courts of this Commonwealth and by legal scholars. 1 N. Kessler, The Law of Criminal Procedure in Pennsylvania 177 (1961); 2 *id.* 504; R. Perkins, Criminal Law 482–90 (2d ed. 1969). It has been reiterated that "[t]he offense occurs when there is a breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive. *Com. v. Peoples*, 345 Pa. 576, 579, 28 A.2d 792 [(1942)]; *McNair's Petition*, 324 Pa. 48, 55, 187 A. 498 [(1936)]." *Commonwealth v. Evans*, supra, 190 Pa.Super. at 225, 154 A.2d at 82. Where the performance of a discretionary duty with an improper or corrupt motive is the issue, the courts have clarified the concepts and defined the terms as follows: "A discretionary duty must be exercised with reason as opposed to caprice or arbitrary action; the term discretion ' "imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice." ' *Commonwealth v. Brownmiller*, . . . . 141 Pa.Super. 107, 120, 14 A.2d 907, 913 [(1940)]. In its penal sense misbehavior in office does not encompass mere errors in judgment or departures from sound discretion, but an official must perform those official duties which require the exercise of a sound discretion to the interest of the Commonwealth and not capriciously, arbitrarily, and with a willful and corrupt design. *Com. v. Brownmiller*, supra . . . . The willful and corrupt motive need not arise from personal benefit." *Commonwealth v. Evans*, supra, 190 Pa. Super. at 225–26, 154 A.2d at 82 (1959). *Accord, Common-*

*wealth v. Schwartz*, 210 Pa.Super. 360, 233 A.2d 904 (1967), *aff'd mem.*, 432 Pa. 522, 248 A.2d 506 (1968) (divided court), *cert. denied*, 398 U.S. 957, 90 S.Ct. 2161, 26 L.Ed.2d 541 (1970).

The Commonwealth argues that appellant performed a discretionary act with an improper or corrupt motive when he "used his position as a powerful City official" to cause Betts "to question whether or not [his contract with the city] might depend on payment of the sums [requested by appellant]." Commonwealth Brief at 11–12. This argument, however, overlooks the distinction set forth in *Commonwealth v. Blatstein*, 231 Pa.Super. 306, 317–319, 332 A.2d 510, 515 (1974), between "misconduct of one *while* in office" and misconduct "in the exercise of the duties of [ ] office."

In *Blatstein*, the coordinator of a committee established by the City of Philadelphia to expedite the planning and construction of a new sports stadium was convicted of bribery and misbehavior in office. This court affirmed the bribery conviction, but reversed the conviction of misbehavior in office because the Commonwealth had failed to prove more than the defendant's solicitation of a bribe:

In order to show misconduct in office, it is not sufficient to show that Blatstein solicited or even accepted a bribe. The Commonwealth must demonstrate that Blatstein followed the course of conduct which the bribe sought to secure. As Professor Perkins has said:

"The corrupt *receipt* of a bribe by an officer, for example, is criminal misconduct of one *while* in office, but such a *recipient* is clearly not acting in the exercise of the duties of his office, nor is this wrongful act under color of his office, and bribery has always been recognized as a separate offense. In fact, if an officer corruptly *receives* a bribe and then corruptly *does* what he has been bribed to do, he is guilty of both bribery and misconduct in office." (Emphasis added.) R. Perkins, Criminal Law 482 (1969).

Since proof of solicitation of a bribe does not necessarily entail proof of misconduct in office, the Commonwealth

had to show that Blatstein acted upon his offer to Sherry in advising the committee. In failing to do so, which the Commonwealth virtually admitted at trial, it failed to prove that Blatstein was guilty of misconduct in office. The Commonwealth having failed in its proof of this necessary, additional element, the lower court erred when it dismissed appellant's motion in arrest of judgment on the indictment charging malfeasance, misfeasance and nonfeasance in office.

231 Pa.Super. at 317–318, 332 A.2d at 515.

*Blatstein* controls the present case. While the Commonwealth's evidence may have been sufficient to prove that appellant either extorted money from Betts or accepted a bribe,[2] the Commonwealth presented no evidence that appellant committed any act in his position as councilman, or under color of office, in connection with the payments he received from Betts.[3] Indeed, what evidence there was was to the contrary. Betts testified that he never asked appellant to intervene on his behalf with regard to his airport contract; that appellant never volunteered to intervene; that to his knowledge appellant did not intervene; and that he dealt exclusively with representatives of the Aviation Division of the City of Philadelphia's Department of Com-

---

**2.** It is, of course, unnecessary to decide whether the evidence was sufficient to establish these crimes since appellant was acquitted in Municipal Court of extortion and was not charged with bribery.

**3.** An act under color of office is defined as
"a pretense of official right to do an act, made by one who has no such right; the use of official authority as a pretext or cover for the commission of some corrupt or vicious act; an act wrongfully done by an officer under the pretended authority of his office."
*Commonwealth v. Bruno*, 203 Pa.Super. 541, 560, 201 A.2d 434, *allocatur refused*, 203 Pa.Super. xxxiii (1964), *cert. denied*, 379 U.S. 965, 85 S.Ct. 656, 13 L.Ed.2d 558 (1965), *quoting Commonwealth v. Channing*, 55 Pa.Super. 510, 516 (1914).
Although the Commonwealth correctly asserts that its proof was sufficient to show that appellant used his office in acquiring payments from Betts in the sense that Betts would not have paid appellant had appellant not been a councilman, there was no proof that appellant pretended to an official right to the payments, or used his official authority as a pretext or cover to secure the payments, or otherwise acted under pretended authority of his office.

merce concerning his contract. William Burns, the Director of Aviation during 1970 and 1971, testified that Betts was hired by the city on the basis of his proven abilities and the recommendation of the airlines that would be leasing space at the terminal; that neither he nor his department was required to consult with city council, or any member thereof, with respect to Bett's hiring; that he in fact did not consult with any councilman or any democratic politician regarding Bett's hiring; that neither appellant nor any other politician ever spoke with him about the hiring; and that the Mayor of Philadelphia appointed the Director of Commerce, Burns's superior. Austin Brough, the Director of Aviation at the time of appellant's trial, testified that in 1971 he was Assistant Director of Aviation, and confirmed Burns's account regarding Betts's hiring. He also testified that while city council was ultimately responsible for the approval of funds for capital improvements at the airport, it was not otherwise involved directly in the expenditure of the funds allocated.

The Commonwealth's proof, therefore, was sufficient to convict appellant of misbehavior in office only if it showed appellant's breach of a positive statutory duty.[4] The Commonwealth argues that the evidence satisfied this requirement by showing appellant's breach of section 10–100 of the Philadelphia Home Rule Charter, which provides:

Councilman Not to Engage in Certain Activities; Penalties.

As provided by statute, no councilman shall solicit, benefit by or be interested directly or indirectly in any contract for the purchase of property of any kind to be paid for from the City Treasury, nor shall he be interested directly or indirectly in any contract for the erection of any structure, or for the supplying of any services to be paid for out of the City Treasury, nor shall he solicit or

4. Many of our cases assume, without explicitly stating, that in order for an official to be convicted of misbehavior in office because of a breach of a positive statutory duty, the breach must be wilful. It is clear, however, that proof of a negligent breach is insufficient. *See Commonwealth v. Hubbs* (No. 2), 137 Pa.Super. 244, 8 A.2d 618 (1939); *Commonwealth v. Brown*, 116 Pa.Super. 1, 175 A. 748 (1934); R. Perkins, Criminal Law, Ch. 5, § 3(D)–Misconduct in Office (1957).

recommend the appointment of any person to any position in the civil service, nor shall be interfere with the performance of the duties of the members of the Philadelphia Police, or of any other employees in any department, board or commission of the City.

According to the Commonwealth, when appellant received a total of $9,000 from Betts, he acquired an interest in Betts's contract with the City of Philadelphia in violation of this provision. This argument presents several nice statutory construction problems as to the scope of section 10–100's prohibitions.[5] However, even if we assume for present purposes appellant's violation of this provision when he requested and accepted the payments from Betts, appellant's conviction of misbehavior in office was still improper.

As the majority notes, 18 P.S. § 5104 (1963)[6] provides: In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the directions of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect.

It is settled that section 5104 prohibits the indictment of a person for a common law offense where the legislature has made the alleged misconduct a statutory criminal offense. *Commonwealth v. Bellis*, 484 Pa. 486, 399 A.2d 397 (1979) (plurality opinion); *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942); *Commonwealth v. Bruno, supra*; *Commonwealth v. Ackerman*, 176 Pa.Super. 80, 106 A.2d 886 (1954), *cert. denied*, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743

5. The Commonwealth cites no authority for its assertion that a councilman becomes "interested" in a contract within the meaning of section 10–100 when he illegally extorts or bribes a person who contracts with the city. *But see generally Commonwealth v. Bruno, supra*. Nor has the Commonwealth explained the significance, if any, of the introductory phrase "[a]s provided by statute . . . .," nor the provision's inconsistent use of the terms "solicit," "benefit by," and "interested in."

6. Repealed by the Act of Dec. 6, 1972, P.L. 1482, No. 334, § 5.

(1955).  *See also Commonwealth v. Bausewine*, 354 Pa. 35, 46 A.2d 491 (1946);  *cf. Commonwealth v. Brown*, 346 Pa. 192, 29 A.2d 793 (1943);  *Commonwealth v. Brown*, 269 Pa.Super. 150, 409 A.2d 108 (1979);  *Commonwealth v. Buzak*, 197 Pa.Super. 514, 179 A.2d 248 (1962);  *Commonwealth v. Litman*, 187 Pa.Super. 537, 144 A.2d 592 (1958) (policy of the law does not permit prosecutions under general provisions of a penal code when applicable special provisions are available).  The Commonwealth does not contest the fact that section 10–100 is a penal provision having the dignity of a statute passed by the General Assembly.[7]  It therefore follows that if the Commonwealth wished to prosecute appellant for violating this provision, it was required to charge him with that violation, and not with the common law offense of misbehavior in office.  Because it did not charge appellant with violating section 10–100, he may not be held for violating that provision, even though the proof at trial may have been sufficient for the jury to have convicted appellant of that offense had he been properly charged with it.  *Commonwealth v. Peoples, supra* ;  *Commonwealth v. Bruno, supra.*

For these reasons I concur in the result reached by the majority.[8]

**7.**  Under section 10–109 of the Philadelphia Home Rule Charter a person who violates section 10–100 may be fined $300, imprisoned 90 days, and removed from office.  Thus, section 10–100 is a penal provision, *see generally Lower Merion Tp. v. Schenk*, 247 Pa.Super. 494, 372 A.2d 934 (1977), and because its enactment was authorized under the Act of April 21, 1949, P.L. 665, § 17, 53 P.S. § 13131 (1957), and article IX, section 2 of the Pennsylvania Constitution, it has the force of criminal legislation passed by the General Assembly.  *Commonwealth v. Cabell*, 199 Pa.Super. 513, 185 A.2d 611 (1962).

**8.**  It should be emphasized that my conclusion that appellant cannot be convicted of misbehavior in office on the basis of his violation of a statutory offense proceeds from a different rationale than the one found in the majority opinion.  The majority cites the plurality opinion in *Commonwealth v. Bellis, supra*, for the proposition that because appellant *could* have been convicted of a statutory offense, he could not be convicted of a common law offense.  Majority op. at 426–427.  Thus, the majority seems to hold that in a case where the Commonwealth's proof establishes both a statutory and a common law offense, a jury may not convict on the common law offense.  I do

not believe this to be the holding of *Bellis.* I read *Bellis* to hold no more than what is set forth in this concurring opinion, *i. e.*, when the Commonwealth's proof establishes *nothing more* than the breach of a penal statute, the accused may not be convicted of a common law offense that proscribes the same conduct. Where, however, the common law offense proscribes conduct different from the conduct proscribed in the penal statute, the accused may, upon sufficient evidence, be convicted of either or both offenses. *See Commonwealth v. Dolny,* 235 Pa.Super. 241, 342 A.2d 399 (1975).

In the present case, the common law offense of misbehavior in office based upon appellant's violation of section 10–100 of the Philadelphia Home Rule Charter proscribed the same conduct that was proscribed by section 10–100. A difference in the conduct proscribed by statute and common law would have occurred only if section 10–100 was violated by a negligent, non–wilful act. *See generally Commonwealth v. Fahey,* 156 Pa.Super. 254, 40 A.2d 167 (1944). Although section 10–100 does not explicitly require the element of scienter for there to be a violation, I believe the provision should be construed as implicitly requiring this element. *See generally Commonwealth v. Barone,* 276 Pa.Super. 282, 419 A.2d 457 (1980) (SPAETH, J., concurring).