472 A.2d 194

**COMMONWEALTH of Pennsylvania**

v.

**Isadore H. BELLIS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed Jan. 20, 1984.

Petition for Allowance of Appeal Denied Aug. 16, 1984.

508

John Rogers Carroll, Philadelphia, for appellant.

Bernard L. Siegel, Deputy District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, HESTER and WATKINS, JJ.

SPAETH, Judge:

This case is before us on remand by the Supreme Court. By opinions and order dated July 11, 1980, a panel of this court reversed the judgments of sentence and ordered appellant discharged. *Commonwealth v. Bellis*, 279 Pa.Super. 421, 421 A.2d 271 (1980) (WATKINS, J., joined by HESTER, J., SPAETH, J., concurring). The Commonwealth petitioned the Supreme Court to allow a further appeal, and on March 13, 1981, the petition was granted. By opinion dated December 23, 1981, the Supreme Court vacated our order of July 11, 1980, and remanded with instructions that we decide issues that appellant had raised before us but that we had not reached. *Commonwealth v. Bellis*, 479 Pa. 323, 440 A.2d 1179 (1981) (KAUFFMAN, J., O'BRIEN, C.J., and WILKINSON, J., dissenting, NIX, J., not participating in the decision). Appellant petitioned the Supreme Court for reargument, but on February 24, 1982, the Court denied the petition. Appellant then filed a motion with this court, requesting that the matter be reassigned to the three-judge panel that had previously heard his appeal, for supplemental briefing, and for further argument. We granted the motion for reassignment and for supplemental briefing, but denied further argument.

The facts are fully stated in our prior decision, and also, the Supreme Court's, and we shall therefore only indicate them here. At the time in question, appellant was an elected member and the majority leader of the City Council of Philadelphia. The charge is that appellant and one Joseph Daly were involved in a scheme by which architects working on City projects were required to "kick-back" five percent of their fees to the Democratic City Committee, with the result that John Betts, an architect, paid appellant $9,000. Appellant was tried in the Municipal Court of Philadelphia for conspiracy and extortion under the Penal

Code of 1939, and for the common law offenses of misfeasance, malfeasance and nonfeasance in office. He was acquitted of conspiracy and extortion but convicted of the common law offenses. He appealed to the Philadelphia Court of Common Pleas, and after a trial *de novo* before a jury, was again convicted of the common law offenses. Post-trial motions were denied, and he was sentenced to a term of two to seven years in prison and to pay a fine of $9,000 and the costs of prosecution.

In our prior decision, the majority of the panel, WATKINS and HESTER, JJ., held that the evidence showed that appellant's actions were punishable as extortion under the Penal Code and that therefore appellant could not be convicted of the common law offenses. This conclusion was based on the provisions of Section 1104 of the Code, 18 P.S. § 5104, that one may not be convicted of common law offenses where the conduct in question is a violation of a specific statutory penal provision. We therefore ordered appellant discharged. 279 Pa.Super. at 427, 421 A.2d at 274. In reversing, the Supreme Court held that the elements of the common law offenses were not the same as the elements of the statutory offense of extortion, from which it followed that even though appellant could have been convicted, and had been acquitted, in Municipal Court of extortion, he might still be convicted in the Court of Common Pleas of the common law offenses. The Supreme Court further held that the evidence was "more than adequate", 497 Pa. at 331, 440 A.2d at 1183, for the jury to find that appellant had committed the common law offenses. The Court therefore reversed our order discharging appellant and remanded the case.

The issues that we must decide on remand are: (1) whether, when appellant appealed from Municipal Court to the Court of Common Pleas, the Commonwealth impermissibly changed the charges against him; (2) whether, because appellant had been acquitted in Municipal Court of the statutory offenses, the Commonwealth was collaterally estopped from introducing certain evidence; (3) whether in

the charge to the jury the trial court erred in defining the common law offenses; and (4) whether appellant's sentence was legal. We have concluded that the Commonwealth did not impermissibly change the charges, and that it was not collaterally estopped. We have also concluded, however, that the trial court erred in its charge to the jury, and that the sentence was illegal. We therefore reverse and order a new trial.

-1-

■ In arguing that when he appealed from the Philadelphia Municipal Court to the Court of Common Pleas, the Commonwealth impermissibly changed the charges against him, appellant particularly relies on *Commonwealth v. Nelson*, 230 Pa.Super. 89, 326 A.2d 598 (1974). There, the defendant was convicted on two charges in Municipal Court but upon appeal to the Court of Common Pleas, was indicted on those plus two additional charges. In affirming an order quashing the additional charges, we reasoned that Municipal Court proceedings ordinarily serve as a defendant's preliminary hearing, at which he is made aware of the charges and evidence against him. We therefore concluded that if upon the defendant's appeal to the Court of Common Pleas the charges are increased, and no further preliminary hearing is provided, with respect to the new charges the defendant has been denied his right to a preliminary hearing.

■ The facts of this case, however, do not establish a violation of the rule set forth in *Nelson*. Appellant was fully apprised of the charges and evidence against him in the Municipal Court proceedings. The Municipal Court complaint expressly referred to both statutory extortion and the common law offenses, and appellant was in fact convicted of the common law offenses. On appellant's appeal from the Municipal Court the Commonwealth did not change or enlarge the charges but merely set them forth in more specific language.

-2-

Appellant's argument that the Commonwealth was collaterally estopped from introducing certain evidence at the trial in the Court of Common Pleas, may be considered in two parts. Appellant argues that his acquittal in Municipal Court of statutory extortion collaterally estopped the Commonwealth from introducing at his trial in the Court of Common Pleas evidence of payments made by Betts to appellant, and that his acquittal of conspiracy collaterally estopped the Commonwealth from introducing evidence of a May 1971 conversation between Daly and Betts regarding the five percent kick-back scheme.

■ In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court held that the doctrine of collateral estoppel in criminal cases is embodied in the Fifth Amendment guarantee of the United States Constitution against double jeopardy. Under the doctrine, "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. Where a judgment of acquittal is based on a general verdict, a court must examine the record to determine whether " 'a rational [fact-finder] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* at 444, 90 S.Ct. at 1194 (citation omitted). *See also Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980) (plurality opinion by Justice NIX, analyzing collateral estoppel aspect of double jeopardy).

■ Appellant argues that the Municipal Court acquittal of statutory extortion necessarily implied a determination that no payments were made by Betts to appellant. We disagree. Appellant relies on the following language in the Supreme Court's opinion reversing and remanding to this court:

The conviction of appellee [now, on remand, appellant] for the common law crimes was supported by the evidence

and was not inconsistent with acquittal of the extortion charges. The Municipal Court judge reasonably could have concluded that appellee, with an improper and corrupt motive, misused his powerful official position to create the impression that he could and would influence the award of the design contracts, while also finding that appellee's fraudulent and wilful receipt of an illegal reward or a fee not allowed by law [*i.e.*, the $9,000 allegedly paid appellant by Betts] had not been proved beyond a reasonable doubt. *See Commonwealth v. Dolny*, 235 Pa.Super.Ct. [241] at 249–250, 342 A.2d [399] at 403.

497 Pa. at 330, 440 A.2d at 1182 (footnotes omitted). Appellant concludes from this language that the only element distinguishing statutory extortion and the common law offenses in this case is the receipt of money. However, we believe that the Supreme Court's statement is to be understood as saying that the Municipal Court judge reasonably could have found that even though appellant did as part of the kick-back scheme receive the money from Betts, thereby misusing his official position with a corrupt motive and committing the common law offenses, the judge also reasonably could have found that the money was not a reward or fee for appellant but for the Democratic Party, and on that basis, have acquitted appellant of statutory extortion. Consistent with this view is the Supreme Court's statement elsewhere in its opinion that appellant "deliberately created the circumstances under which he or his political party could benefit from a pay-off on a City contract." 497 Pa. at 331 n. 12, 440 A.2d at 1183 n. 12.

We also disagree with appellant's argument that the Municipal Court acquittal of conspiracy estopped the Commonwealth from introducing evidence of the May 1971 conversation between Daly and Betts. The acquittal of conspiracy did not imply a determination that the May 1971 conversation did not occur. The Municipal Court judge reasonably could have found that the conversation between Daly and Betts occurred, while at the same time finding that appellant had not agreed with Daly to extort money

from Betts. The Municipal Court judge also reasonably could have found that although appellant and Daly did not agree to extort money from Betts, appellant later learned of this conversation and on his own made use of this knowledge. The evidence of the conversation was admissible, not under the co-conspirator exception to the hearsay rule, but as nonhearsay, *i.e.,* not to prove the truth of the matter asserted but to explain Bett's state of mind and the reason for his actions when appellant later requested money from him. *See Commonwealth v. Tselepis,* 198 Pa.Super. 449, 181 A.2d 710 (1962). Moreover, the conversation was relevant as nonhearsay because regardless of whether a kickback scheme existed, an inference could be drawn that appellant later learned of the conversation and took advantage of it to obtain money from Betts.

-3-

In arguing that the charge to the jury did not properly define the common law offenses, appellant objects to two features of the charge.[1]

The first feature of the charge that appellant complains of is that the charge was confusing. In part this argument depends on appellant's contentions regarding collateral estoppel, which we have discussed above and found without merit. Reading the charge as a whole, we do not find it confusing.

The second feature of the charge that appellant complains of is that the charge was "erroneous" and "inapt," in particular, in that the trial court instructed the jury that appellant could be found guilty of the common law offenses

---

1. Appellant's supplemental brief states that the issue of the propriety of the charge has been "exhaustively covered in [appellant's] earlier brief...." Supplemental Brief at 1. In appellant's original brief it is argued at pages 38 through 45 that "the jury instructions on the elements of the offenses charged were erroneous, confusing and inapt."

on the basis of his having violated the Philadelphia Home Rule Charter.[2]

 The common law offenses of misfeasance, malfeasance, and nonfeasance in office, which may be compendiously referred to as misbehavior or misdemeanor in office, occur when there is "either the breach of a positive statutory duty *or* the performance by a public official of a discretionary act with an improper or corrupt motive." *Commonwealth v. Peoples*, 345 Pa. 576, 579, 28 A.2d 792, 794 (1942) (citations omitted; emphasis added). Here, the trial court charged that appellant could be convicted on both of these bases, *i.e.*, the breach of a positive statutory duty and the performance of a discretionary act with an improper motive. The court described the positive statutory duty in question as being imposed by Section 10–100 of the Philadelphia Home Rule Charter, 31 Pa.Code § 10.10–100.[3] We

**2.** In its supplemental brief the Commonwealth argues that appellant has waived this argument. Supplemental Brief for Commonwealth at 3 n. 2, 5. However, there has been no waiver. On page 41 of appellant's original brief, appellant, referring to "Point I of this argument, *ante*, explains why it was error to submit the Charter theory to the jury." As just discussed, *see* footnote 1, *supra*, appellant's supplemental brief incorporates the argument made in his original brief.

**3.** The charge read in relevant part as follows:
Well, then, there are three material elements of the offense known as misdemeanor in office. First, the defendant must be a public officer within the contemplation of law.
Second, he must have been guilty of an act of commission, that is, doing something, or omission, failing to do something, or of negligent misconduct with respect to the duties of his office which worked an injury to the public or an individual.
Third, that such act or negligent misconduct must have been done intentionally and with an accompanying mental state known as a corrupt mind.

The Home Rule Charter of the City of Philadelphia imposes various duties on the elected officials including City Councilmen. One of them is set forth in Article 10–100 as follows: No Councilman shall solicit, benefit by or be interested directly or indirectly in any contract for the purchase of property of any kind to be paid from the City Treasury. Nor shall he be interested directly or indirectly in any contract for the erection of any structure or for the supplying of any services to be paid for out of the City Treasury.

have concluded that this was error in that in fact appellant could not be convicted of the common law offenses on the basis of having violated his duty under Section 10–100 of the Home Rule Charter.

The reason for this conclusion is that Section 1104 of the Penal Code, Act of June 24, 1939, P.L. 872, 18 P.S. § 5104, provided:

> In all cases where a remedy is provided or duty enjoined, or anything directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect.

Section 10–100 of the Home Rule Charter is a "penal provision[ ]" because Section 10–109 of the Charter provides that a violation of it "shall be a misdemeanor, punishable by a fine of not more than three hundred dollars or by imprisonment for not more than ninety days, or both, and if the violator is an officer or employee of the City, by removal from office or immediate dismissal." In addition, Section 10–100 must be regarded as the equivalent of "the penal provisions of [an] act of assembly" because as part of the Home Rule Charter it was enacted under the authority of 53 P.S. § 13131 and article IX, section 2, of the Pennsylvania Constitution and therefore has the force of a statute enacted by the General Assembly. *Commonwealth v. Cabell*, 199 Pa.Super. 513, 185 A.2d 611 (1962) (since Section 10–109 makes violation of Section 10–108 a misdemeanor, violation must be prosecuted by indictment in quarter sessions court; "[w]hether a municipal charter comes into being by direct statutory grant of the legislature or by adoption by the constituent electorate ..., it is as much legislative in the one instance as in the other and has equal legal force and standing in both"). Therefore: This is a case where, under Section 1104 of the Penal Code, 18 P.S. § 5104, something *was* "directed to be done by the penal provisions of any act of assembly", and that being so, "no

penalty shall be inflicted ... agreeably to the provisions of the common law."

The controlling case is *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942). There the defendants, who were city councilmen, were indicted for malfeasance, misfeasance, and nonfeasance in office for having voted upon a measure in which they had a personal or private interest in violation of The Third Class City Law of May 23, 1931, P.L. 932, Article X, Section 1009. They were convicted, but the trial court granted their motions in arrest of judgment. This court reversed, but on further appeal the Supreme Court reversed this court and ordered the trial court's order granting the motions in arrest reinstated. The Supreme Court noted that the defendants had indeed violated The Third Class City Law. Thus, they had committed the breach of a positive statutory duty. However, the Court held, this breach could not support their indictment for and conviction of malfeasance, misfeasance, and nonfeasance in office because such indictment and conviction were precluded by Section 1104 of the Penal Code. As noted above, Section 1104 provides that "where a remedy is provided ... by the penal provisions of any act of assembly, ... no penalty shall be inflicted, or anything done agreeably to the provisions of the common law...." The Third Class City Law did provide a remedy; specifically, it provided that a councilman who voted upon a measure in which he had a personal or private interest "shall forfeit his office." The Court therefore concluded that "[s]ince a particular mode of proceeding to accomplish removal from office, i.e., by quo warranto, is provided by the Act of 1836, the common law is abrogated by section 1104 of the Penal Code of 1939. Therefore, the indictment cannot be sustained and the learned court below properly arrested judgment." *Id.*, 345 Pa. at 581, 28 A.2d at 795.

■ So here: Appellant's violation of Section 10–100 of the Home Rule Charter could not support his conviction of the common law offenses of malfeasance, misfeasance and nonfeasance in office because Section 10–109 of the Charter

provided a remedy, specifically, a fine of not more than three hundred dollars, or imprisonment of not more than ninety days, or both, and removal from his office as City Councilman. It was therefore error for the trial court to charge the jury that one basis on which appellant could be convicted of the common law offenses was his breach of the duty imposed by Section 10–100 of the Charter. To be sure, the court also charged that another possible basis was the performance of a discretionary act with an improper motive. However, it is impossible to know on which basis the jury found appellant guilty. The court's error in charging on both bases therefore may not be characterized as harmless beyond a reasonable doubt, and a new trial must be granted.

 We do not believe that the Supreme Court's opinion remanding this case forecloses the above analysis, although we find the opinion somewhat unclear in this regard and we acknowledge that the point has caused us difficulty. The Supreme Court held that Section 1104 of the Penal Code of 1939 did not preclude appellant's prosecution for both statutory extortion and misbehavior in office under the common law. In footnote 11 the Court stated:

> We do not find persuasive appellee's claim that his common law prosecution is barred under Section 1104 because of the existence of a provision in the Philadelphia Home Rule Charter which forbids conflicts of interest.

> . . . . . .

> Like the extortion statute, this provision addresses misconduct separate and distinct from the common law crimes, and therefore does not bar prosecution for those crimes. *See Commonwealth v. Dolny,* 235 Pa.Super.Ct. at 250, 342 A.2d at 403.

497 Pa. at 331, 440 A.2d at 1183.

We do not read this as holding that appellant could properly be convicted of a common law offense on the basis of a violation of Section 10–100 of the Home Rule Charter, just as we do not read the remainder of the Court's opinion as holding that appellant could properly be convicted of com-

mon law offenses on the basis of the commission of statutory extortion. Appellant raised two related issues on appeal: (1) whether the existence of statutory extortion and Section 10–100 *precluded prosecution* for common law offenses, and (2) whether the trial court *properly charged the jury* with respect to Section 10–100. As we read the Supreme Court's opinion: The Court reached only the first of these issues, holding only that the existence of statutory extortion and Section 10–100 do not preclude prosecution for common law offenses. The Court did not reach, and therefore did not discuss, much less decide, the issue of the propriety of charging the jury that appellant could be convicted of a common law offense on the basis of a violation of Section 10–100. Or to state the point differently: To say, as the Supreme Court has said, that Section 10–100 does not preclude prosecution for common law offenses is not to say, as the trial court in its charge to the jury said, that Section 10–100 may be the basis of prosecution for common law offenses. The two statements are different, and one does not follow from the other.

–4–

In challenging his sentence as illegal, appellant argues that no statute authorized his imprisonment for seven years. In his view, the sentence for a common law crime must be comparable to the sentences statutorily prescribed for similar statutory crimes; when this comparison is made, he says, it will be seen that his sentence for seven years is illegal.[4] In response, the Commonwealth argues that there was a statute that authorized appellant's imprisonment for seven years. Specifically, the Commonwealth relies on the Act of April 5, 1790, 2 Sm.L. 531, § IV, as amended by the Act of April 4, 1807, 4 Sm.L. 393, § 1, which provided a

4. It might seem that since we have concluded that a new trial must be ordered, we need not reach the issue of the legality of appellant's sentence. We nevertheless do reach it, for two reasons: first, in obedience to the Supreme Court's instructions to decide the issues that we did not decide when this case was last before us; and second, because if on retrial appellant is again convicted, the question of what is a permissible sentence will recur.

maximum term of seven years [5] imprisonment for all offenses that had been punishable by "burning in the hand, cutting off the ears, nailing the ear or ears to the pillory, placing in and upon the pillory, whipping, or imprisonment for life." Offenses not within this provision and not otherwise having penalties prescribed by statute were punishable by fine and imprisonment in the discretion of the court. *James v. Commonwealth*, 12 S & R 220 (Pa.1825). According to the Commonwealth, misbehavior in office was a pillory offense prior to 1790,[6] and therefore was within the Act of 1790 as amended by the Act of 1807.

The Act of March 31, 1860, P.L. 427, No. 375, repealed Section IV of the Act of 1790 and Section 1 of the Act of 1807 so far as altered or supplied by that Act or by the Penal Code of 1860, Act of March 31, 1860, P.L. 382, No. 374. Section 178 of the Penal Code of 1860 provided:

Every felony, misdemeanor or offense whatever, not specifically provided for by this act, may and shall be punished as heretofore.

Section 178 of the Penal Code of 1860 was succeeded by Section 1101 of the Penal Code of 1939, 18 P.S. § 5101, which applies to this case, and which provided:

Every offense now punishable either by the statute or common law of this Commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore.

The question we must decide, therefore, is whether Section 178 of the Penal Code of 1860 (and so, Section 1101 of

---

**5.** Although it is arguable that the increase from a maximum of two years, provided by the Act of 1790, to a maximum of seven years, provided by the Act of 1807, was not intended to apply to all the offenses covered by Section IV of the Act of 1790, *see, e.g., Hackett v. Commonwealth*, 15 Pa. 95 (1850) (legislature had most in view the attempt to commit those offenses that were formerly capital), this court apparently rejected such an argument in *Commonwealth v. Schaffer*, 221 Pa.Super. 105, 289 A.2d 488 (1972).

**6.** For purposes of argument, we assume that the Commonwealth is correct, although we note that there is some authority for looking further, to see whether such punishment was in fact actually imposed prior to 1790. *Rogers v. Commonwealth*, 5 S & R 463 (Pa.1819).

the Penal Code of 1939) carried forward the seven year maximum sentence for pillory offenses. This appears to be a question of first impression.[7]

In *Commonwealth v. Clopton,* 447 Pa. 1, 289 A.2d 455 (1972), the Supreme Court recognized but did not decide this question. On the one hand, the Court said:

> There is substantial authority for the proposition that this section [Section 178 of the Penal Code of 1860] gave the courts jurisdiction to determine what the appropriate sentence should be, guided by the rule, however, that "[w]here there is no punishment fixed by statute, the court may pass judgment *of a character similar to that provided for the class of offenses to which the particular crime belongs.*"

*Id.,* 447 Pa. at 9–10, 289 A.2d at 459 (footnote omitted, emphasis in original).

But on the other hand, the Court said:

> An alternative route ... reasons that Section 178 of the 1860 Act making pillory crimes punishable as "heretofore" simply referred to the law existing up until the date the 1860 Act was to take effect.... Thus since the 1807 Act preceded the 1860 penal code, and quite literally constituted the "heretofore," the seven year standard for the pillory offenses would remain intact.

*Id.,* 447 Pa. at 10, 289 A.2d at 459–60.

▮ We acknowledge that there is support for the second of these alternative lines of reasoning. *See Commonwealth v. Peoples,* 345 Pa. 576, 28 A.2d 792 (1942) (statutory provision providing for forfeiture of office interpreted to apply to facts of case because it would be "manifestly absurd" to punish the offense under common law with possible penalty of a maximum term of seven years imprisonment); J. Maurer, Notes on Pennsylvania Criminal Law and Procedure, V. 1, 218 (1940) (Penal Code of 1860 did not repeal Acts of 1790 and 1807); S. Sadler, Criminal Procedure in Pennsylvania, V. 2, § 627 (2d ed. 1937) (sentence

---

7. And one not likely to recur, since the Crimes Code has abolished common law crimes. 18 P.S. § 107(b).

may be under common law or under Acts of 1790 and 1807). Nevertheless, we prefer the first line of reasoning, interpreting Section 178 as repealing the Acts of 1790 and 1807 and as preserving the then existing punishment—the punishment "heretofore"—for common law misdemeanors not having a penalty prescribed by statute, *i.e.*, fine and imprisonment in the discretion of the court. *See, e.g., Commonwealth v. Mohn,* 52 Pa. 243 (1866); *Commonwealth v. Orris,* 136 Pa.Super. 137, 7 A.2d 88 (1939); *Commonwealth v. DeGrange,* 97 Pa.Super. 181 (1929); *Commonwealth v. Flaherty,* 25 Pa.Super. 490 (1904). This interpretation is more consistent with the rule of construction that penal provisions are to be strictly construed against the Commonwealth, 1 Pa.C.S. § 1928(b)(1), and with the policy behind the rule, that the accused must have clear notice of the unlawfulness of his conduct and the penalties for it. *See Commonwealth v. Broughton,* 257 Pa.Super. 369, 377, 390 A.2d 1282, 1286 (1978). We therefore conclude that the trial court was not authorized by the Act of 1790 and the Act of 1807 to sentence appellant to seven years imprisonment, but that the court should have determined the sentence by exercising the discretion conferred on it by Section 178 of the Penal Code of 1860 and Section 1101 of the Penal Code of 1939.

■ As regards the discretion conferred on the court by Section 178, it has been held, and we agree, that the sentence to be imposed must be similar to that provided by statute for similar statutory offenses. *See, e.g., Commonwealth ex rel. Cavalucci v. Smith,* 154 Pa.Super. 613, 616, 36 A.2d 732, 733 (1944) (attempt to commit statutory rape "should not carry with it heavier penalty than that prescribed for attempt to commit forcible rape, or assault and battery with intent to commit such rape, under section 93, for which the maximum penalty is five years in the penitentiary."); *Commonwealth ex rel. Swisher v. Ashe,* 145 Pa. Super. 454, 21 A.2d 479 (1941) (appellant can not be sentenced to longer term for attempted larceny than is authorized by statute for completed offense); *Commonwealth v.*

*Orris, supra,* (sentence of 18 months to three years for attempted statutory rape was within statutory punishment prescribed for attempted forcible rape); *Commonwealth v. Kelsea,* 103 Pa.Super. 399, 157 A. 42 (1931). *See also* N. Kessler, The Law of Criminal Procedure in Pennsylvania, V. 1, 173 (1961); B. Laub, Pennsylvania Manual of Civil and Criminal Penalties, Sentences, Jurisdiction 26A (1972) ("Thus, it would seem that indecent assault, indecent liberties, etc., being a species of aggravated assault and battery would carry a penalty similar to that provided by statute for aggravated assault and battery.").

Upon reviewing the Penal Code of 1939, which as we have noted was in effect at the time of the conduct in question here, we have found two statutory misdemeanors that are similar to the common law offense of misbehavior in office: extortion under former 18 P.S. § 4318 and bribery under former 18 P.S. § 4667. Both of these offenses were punishable by a fine not exceeding $500 or imprisonment not exceeding one year, or both. We have also found in the Penal Code of 1939 a statutory felony that is similar to the common law offense of misbehavior in office: bribery under former 18 P.S. § 4303. This offense was punishable by a fine not exceeding $1,000 or imprisonment not exceeding five years, or both. Finally, we have found a provision in the General Municipal Law that is similar to the common law offense of misbehavior in office: acceptance of bribes. by councilmen under 53 P.S. § 553. This offense is punishable by a fine not exceeding $10,000 and imprisonment not exceeding five years.

██ Given these similar statutory provisions, we hold, applying the standard set forth above, that if on retrial appellant is again convicted, he may not be sentenced more severely than is permitted by the most severe of the above provisions, *i.e.,* a $10,000 fine and five years imprisonment. We do not now decide, however, which of the above statutory offenses is most similar to the offense committed in this case. That decision will in the first instance be for the sentencing judge; the statutory offense that the sentencing

judge finds to be most similar to the common law offense of misbehavior in office as provided at the retrial will provide the maximum penalty that may be imposed.

In making this determination the sentencing judge will need to consider the differences among the above statutory offenses. We offer the following guidelines to aid in this analysis. Section 4303 dealt with a limited form of governmental bribery, where an officer accepted or agreed to accept a bribe to influence a matter within the scope of his official duties. *Commonwealth v. Bellis*, 484 Pa. 486, 399 A.2d 397 (1979). Similarly, 53 P.S. § 553 deals with a limited form of governmental bribery where a councilman's vote or official acts are influenced. *Id.* Sections 4667 and 4318 dealt with more general forms of bribery and extortion. Section 4667 dealt with any agent who accepted anything of value "for doing or omitting to do any act, or for showing any favor or disfavor in relation to the affairs or business of his principal." Similarly, Section 4318 applied to any public officer who "by color of his office" took "any fee or reward whatever, not, or more than is, allowed by law." The distinction between statutory bribery and statutory extortion turns on whether appellant secured the money through coercion or threats, express or implied, or whether the money was volunteered to him. *Commonwealth v. Francis*, 201 Pa.Super. 313, 191 A.2d 884 (1963), *cert. denied*, 375 U.S. 985, 84 S.Ct. 517, 11 L.Ed.2d 472 (1964). The facts of this case as shown upon retrial will determine which of these statutory offenses is most similar to the offense committed in this case.

The judgment of sentence is reversed and the case is remanded for a new trial.

WATKINS, J., files a concurring opinion.

WATKINS, Judge, concurring:

While I agree with the Majority's reasoning with respect to the issues covered by its opinion, I feel compelled to note that I am still confused by the apparent inconsistencies

between the Supreme Court's decision in *Commonwealth v. Bellis*, 484 Pa. 486, 399 A.2d 397 (1979) (BELLIS I) and *Commonwealth v. Bellis*, 479 Pa. 323, 440 A.2d 1179 (1981) (BELLIS II). Although I note that the Supreme Court did attempt to distinguish between Bellis II and Bellis I, I feel that the holdings in said cases are inconsistent with each other because I do not see how the crimes of bribery and extortion vis-a-vis their relationship to the common law crimes can be distinguished.