494 A.2d 1072
**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Isadore H. BELLIS, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1985.
Decided June 28, 1985.

Eric B. Henson, Deputy Dist. Atty., Gaele M. Barthold, Chief/Prosecution, Bernard L. Siegel, Asst. Dist. Atty., for appellant.

Alan J. Davis, Philadelphia, for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This is a Commonwealth appeal by allowance from the Order of the Superior Court which granted Appellee a new trial due to error committed by the trial judge in instructing the jury as to the circumstances under which Appellee could be found guilty of the common law crimes of misfeasance, malfeasance and nonfeasance while in office.

The facts of this case have been fully set forth in the prior opinions of this Court and the Superior Court, and will be referred to in this Opinion only insofar as they are relevant. Appellee, Isadore Bellis, was tried in the Philadelphia Court of Common Pleas and found guilty by a jury of the common law crimes of misfeasance, malfeasance and nonfeasance while serving in the capacity of a city councilman for the City of Philadelphia. Appellee took an appeal to the Superior Court alleging, *inter alia,* that his conviction of the common law crimes was precluded by the existence of a specific statutory crime which dealt with the

conduct for which he was charged, i.e. extortion under former 18 P.S. § 4318, citing as authority former 18 P.S. § 5104 which provided that:

> In all cases where a remedy is provided or duty enjoined, or anything directed to be done by the penal divisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect.

The Superior Court agreed with this argument, stating that the *mere existence* of the statutory offense precluded a conviction of the common law crimes; i.e. even if the statutory offense was also charged and the defendant was acquitted of same, the common law offenses were still precluded. The Commonwealth was granted allowance to appeal to this Court, and we held in *Commonwealth v. Bellis*, 497 Pa. 323, 440 A.2d 1179 (1981) (*Bellis II*) that a common law prosecution is not barred simply because the facts would also support conviction of a statutory crime which includes elements not found in the common law offense. Thus, since the statutory crime of extortion contained elements not found in the common law crimes, Appellee could be convicted of either or both crimes. On this basis, we reversed the Superior Court and sent the case back for resolution of the remaining issues raised by Appellee but not dealt with by that court. On remand, the Superior Court, in *Commonwealth v. Bellis*, 324 Pa.Super. 506, 472 A.2d 194 (1984), dealt with the issue of whether it was error to charge the jury that Appellee could be found guilty of the common law crimes if they found that he had breached the positive statutory duty imposed by Section 10–100 of the Philadelphia Home Rule Charter, 351 Pa.Code § 10.10–100, a duty the breach of which carries a penal sanction under § 10–109 of the Charter. The Superior Court concluded that it was indeed error and granted Appellee a new trial. We affirm.

126

In *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942), we held that the common law offenses of misfeasance, malfeasance and nonfeasance in office occur when there is "either the breach of a positive statutory duty *or* the performance by a public official of a discretionary act with an improper or corrupt motive." *Id.*, 345 Pa. at 579, 28 A.2d at 794. (Emphasis added) The Superior Court correctly interpreted our holding in *Bellis II* to say that prosecution for the common law offenses would be allowed where the elements of the offense differed from those of the statutory offense. However, it does not follow that a common law offense can include a statutory offense which provides a separate penalty for its violation as an element where culpability can be based *solely* on violation of the statutory proscription. From this it follows that it was error for the trial judge to instruct the jury that defendant could be found guilty of the common law offense if it were found that he breached the positive duty set forth in § 10–100 of the Home Rule Charter. As was stated in *Peoples*, conviction of the common law crime requires proof of either a breach of a positive statutory duty *or* the performance by a public official of a discretionary act with an improper or corrupt motive. Since the statutory duty outlined in the charge provided a penal sanction for its violation, consistent with *Bellis II*, Appellee could only have been convicted of the common law crimes if the jury were to find that he had performed a discretionary act with an improper or corrupt motive, the second alternative leg of the offense.[1] Because the charge to the jury contained the statutory duty defined in § 10–100 of the Home Rule Char-

1. So as not to distort the logic of the majority opinion by a misinterpretation of its holding as seemingly set forth in the dissenting opinion of Mr. Justice Hutchinson, it is necessary to note that had there existed and been charged by the trial court another positive statutory duty not providing a separate penalty for its violation, the Commonwealth would not have been precluded from proving nor the trial court from instructing on culpability based upon such a statutory duty.

In no way should our holding be construed to imply that municipal legislation providing penal sanctions may preempt the statutory law of this Commonwealth.

ter, however, it is unclear whether the jury improperly applied that duty to find Appellee guilty of the common law offenses or whether they found that he had performed a discretionary act with an improper or corrupt motive. "Where the trial court charges both correctly and incorrectly on the same proposition it is impossible to determine which instruction was followed by the jury, there must be a reversal. [sic]" *Commonwealth v. Holloway*, 212 Pa.Super. 250, 254, 242 A.2d 918, 920 (1968). On this basis we must agree with the Superior Court that the jury charge was error.

Affirmed.

NIX, C.J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

HUTCHINSON, J., files a dissenting opinion in which FLAHERTY, J., joins.

HUTCHINSON, Justice, dissenting.

I do not believe the City of Philadelphia has the authority, under the home rule provisions of the First Class Cities Code, to prescribe punishment for conduct which was punishable as a misdemeanor under the general common law. Instead, I believe the General Assembly has delegated to Philadelphia only the power to establish and punish summary offenses and those misdemeanors which describe minor criminal conduct of parochial concern to that municipality and not to the Commonwealth as a whole. *See Commonwealth v. Cabell*, 199 Pa.Superior Ct. 513, 185 A.2d 611 (1962). I also believe that the majority errs in holding that Section 1104 of the former Penal Code, 18 P.S. § 5104 (repealed), limits the penalty to which a Philadelphia official is subject for a misdemeanor in office, based upon breach of the substantive duties set forth in Section 10–100 of the Philadelphia Home Rule Charter, to the minor penalty prescribed in Section 10–109. Section 10–109 of the Charter

only prescribes the penalty for violations of the substantive conflict-of-interest provision set forth in Section 10–100. Here, however, the Commonwealth has proved the additional element of corrupt motive.

The penal provisions of Section 10–109, therefore, do not apply to this appellee's corrupt act. Accordingly, Section 1104 of the Penal Code should not preclude prosecution and, on conviction, punishment under the general criminal law of this Commonwealth for the common law crime of misdemeanor in office predicated on a breach of the statutory duty described in Section 10–100.[1] Corrupt officials should be subject to the same penalties everywhere in this Commonwealth. No political subdivision was meant to have authority to reduce them under the powers delegated to it by Pennsylvania's Constitution and its General Assembly, the First Class City Home Rule Charter Act notwithstanding.

The issue confronting the Court is not an esoteric one involving the history of an obscure and outmoded fossil of the ancient common law. If, under the old Penal Code, corrupt officials in Philadelphia were subject only to the sanctions appropriate for summary offenses which are prescribed in the City's Charter when they sell the public trust for personal gain, I cannot see how they can now be subject to any greater penalty under Section 5302 of the Crimes Code. *See* 18 Pa.C.S. § 5302.[2]

1. Bellis was not charged with violating Section 10–100 of the Charter. If he had been so charged, presumably, any conviction for the Charter violation would merge into the conviction for misdemeanor in office for purposes of sentencing. As already stated, Section 10–109 does not pre-empt punishment required under the common law because a home rule municipality does not have the authority to usurp the State's power to prescribe sanctions for criminal conduct which offends public morality, generally.

2. Section 5302 reads:
   § 5302. Speculating or wagering an official action or information
   A public servant commits a misdemeanor of the second degree if, in contemplation of official action by himself or by a governmental unit with which he is associated, or in reliance on information to which he has access in his official capacity and which has not been made public, he:

Article 9, § 2 of the Pennsylvania Constitution empowers every municipality within the Commonwealth to adopt home rule and provides that "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly." Pa.Const. art. IX, § 2. This constitutional provision is implemented by the First Class City Home Rule Act, Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §§ 13101–13157, which is applicable exclusively to Philadelphia, and the Home Rule Charter and Optional Plans Law ("Act 62"), Act of April 13, 1972, No. 62, *as amended,* 53 P.S. §§ 1–101–1–1309, which applies to all other municipalities.

Section 17 of the First Class Home Rule Act, 53 P.S. § 13131, defines the scope of authority delegated to first class home rule cities:

Subject to the limitations hereinafter prescribed, the city taking advantage of this act and framing and adopting or amending its charter thereunder shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions.... The charter of any city adopted or amended in accordance with this act may provide for a form or system of municipal government and for the exercise of any and all powers relating to its municipal functions, not inconsistent with the Constitution of the United States or of this Commonwealth, to the full extent that the General Assembly may legislate in reference thereto as to cities of the first class, and with like effect, and the city may enact ordinances, rules and regulations necessary and proper for carrying into execution the foregoing powers and all other powers vested in the city by the charter it

(1) acquires a pecuniary interest in any property, transaction or enterprise which may be affected by such information or official action;

(2) speculates or wagers on the basis of such information or official action; or

(3) aids another to do any of the foregoing.

adopts or by this or any other law. Ordinances, rules and regulations adopted under the authority of this act or under the provisions of any charter adopted or amended hereunder shall be enforceable by the imposition of fines, forfeitures and penalties, not exceeding three hundred dollars ($300), and by imprisonment for a period not exceeding ninety days.

(Footnotes omitted). Section 11 of the statute explains the impact of the adoption of home rule on existing laws:

Any new charter or amendments to the charter of a city ... shall become the organic law of the city at such time as may be fixed therein and all courts shall take judicial notice thereof. *So far as the same are consistent with the grant of powers and the limitations, restrictions and regulations hereinafter prescribed,* they shall supersede any existing charter and all acts or parts of acts, local, special, or general, affecting the organization, government and powers of such city, to the extent that they are inconsistent or in conflict therewith.

53 P.S. § 13111 (emphasis supplied). An examination of the above-quoted statutory provisions shows that Philadelphia's legislative power is restricted to its own municipal functions. *Commonwealth ex rel. Specter v. Freed*, 424 Pa. 508, 514, 228 A.2d 382, 385 (1967) (plurality opinion); *Ryan v. City of Philadelphia*, 77 Pa. Commonwealth Ct. 283, 285 n. 3, 465 A.2d 1092, 1093 n. 3 (1983). *See also*, Philadelphia Home Rule Charter, 351 Pa.Code § 1.1–100.[3]

---

**3.** This provision of the Philadelphia Home Rule Charter defines the scope of the City's powers:

Pursuant to Section 1 of Article XV of the Constitution and the Act of the General Assembly, approved April 21, 1949, P.L. 665, of the Commonwealth of Pennsylvania, the City of Philadelphia (hereafter in this charter called "the City") shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions, including any additional powers and authority which may hereafter be granted to it. The City shall have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable by the imposition of fines, forfeitures and penalties not exceeding three

Section 18 of the Home Rule Act enumerates certain limitations on the powers granted under Section 17. Specifically, Section 18 states, in relevant part, that:

[n]otwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, *or in limitation or enlargement of,* powers granted by acts of the General Assembly which are—

.    .    .    .    .

(b) Applicable in every part of the Commonwealth.

(c) Applicable to all the cities of the Commonwealth.

53 P.S. § 13133 (emphasis supplied).[4]

Our Court has held that the foregoing limitations of power:

concern only laws in relation to substantive matters of State-wide concern, such as the health, safety, security and general welfare of all the inhabitants of the State, and not to matters affecting merely the *personnel* and *administration* of the offices local to Philadelphia and which are of no concern to citizens elsewhere.

*Lennox v. Clark,* 372 Pa. 355, 378, 93 A.2d 834, 845 (1953) (emphasis in original),[5] *overruled on other grounds, Walsh*

hundred dollars and by imprisonment for a period not exceeding ninety days or by such greater fines, forfeitures and penalties and periods of imprisonment as the General Assembly of the Commonwealth of Pennsylvania may from time to time authorize.

**4.** In the instant case, we are dealing with a common law, not a statutory, crime. I do not consider this distinction significant because "the law of a state is embodied as well in its common law rules as in its statutes." *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 445, 64 S.Ct. 208, 216, 88 L.Ed. 149 (1943). *See* 1 Pa.C.S. § 1503(a) ("[t]he common law and such of the statutes of England as were in force in the Province of Pennsylvania on May 14, 1776 and which were properly adapted to the circumstances of the inhabitants of this Commonwealth shall be deemed to have been in force in the Commonwealth from and after February 10, 1777).

**5.** Cases cited on the basis of this dichotomy include: *Commonwealth ex rel. Specter v. Freed, supra* (Philadelphia's district attorney did not have the subpoena powers granted to certain city officials under the Home Rule Charter because the district attorney is essentially a state officer whose powers, duties and functions are not affected by the Home Rule Charter); *Commonwealth v. Ray,* 218 Pa.Superior Ct. 72, 272 A.2d 275 (1970), *vacated on procedural grounds,* 448 Pa. 307, 292

*v. Tate,* 444 Pa. 229, 282 A.2d 284 (1971), *quoted with approval in Addison Case,* 385 Pa. 48, 55, 122 A.2d 272, 274–75 (1956), *appeal dismissed,* 352 U.S. 956, 77 S.Ct. 353, 1 L.Ed.2d 316 (1957). *See Cali v. Philadelphia,* 406 Pa. 290, 311, 177 A.2d 824, 835 (1962); *Commonwealth v. Cabell,* 199 Pa.Superior Ct. at 525, 185 A.2d at 617.

Only the Legislature of this Commonwealth is vested with the authority to define criminal conduct of general impact and prescribe its punishment. *Commonwealth v. Glover,* 397 Pa. 543, 545, 156 A.2d 114, 116 (1959). Act 62 recognizes the sovereignty of the state in this area and expressly prohibits home rule municipalities from "[d]efining or providing for the punishment of any felony or misdemeanor." 53 P.S. § 1–302(a)(9). The same limitation on local authority over criminal conduct, although not stated expressly, must be implied in Section 17(b) of the First Class Cities Home Rule Act. Comment, *Home Rule in Pennsylvania,* 81 Dick.L.Rev. 264, 289 n. 197 (1977).

Political corruption, even at the municipal level, offends the public morality wherever it occurs. It is a matter of statewide, and not just local, concern. Besides, rudimentary notions of justice require that a public official who breaches the public trust for personal gain be subject to the same punishment in any local jurisdiction. In holding that

A.2d 410 (1972) (because the Uniform Firearms Act prohibits the carrying of firearms in public without a license, Philadelphia exceeded the powers granted to it under the First Class Cities Home Rule Act in enacting an ordinance containing a similar prohibition and, therefore, the ordinance is unconstitutional). *Compare Ebald v. Philadelphia,* 7 D & C 2d 179, 183 (1956), *affirmed,* 387 Pa. 407, 128 A.2d 352 (1957) (Philadelphia civil service regulation outlining a comprehensive program for disability compensation for heart and lung diseases for policemen and other city employees superseded a similar statewide plan because the "municipal employer, rather than the Commonwealth, has the more vital interest in the health, welfare, efficiency and morale of its personnel, and is more peculiarly suited to ascertain and meet their legitimate needs"); *Commonwealth v. Cabell, supra* (Sections 10–108(1) and 10–109 of the Philadelphia Home Rule Charter which make fraud in civil service examinations a misdemeanor, do not violate the limitation set forth in Section 18(c) of the enabling legislation where corresponding state statutes relating to civil service fraud for each class of city prescribe differing penalties for the same offense).

the penalties prescribed in Section 10–109 of the Philadel-phia Home Rule Charter preempt common law sanctions for misdemeanor in office by virtue of Section 1104 of the former Penal Code, the majority, today, permits Philadel-phia to reduce the common law crime of misdemeanor in office to a summary offense and creates a distinct and favored class of corrupt officials limited to the City's juris-diction. No home rule municipality should have the authori-ty to so interfere with the interest of the state and all its citizens in insuring that all public officials within the Com-monwealth, who fail to maintain the minimum standards of the criminal law, are subject to penalties more serious than those prescribed for a summary offense. Corruption in office should not be decriminalized in Philadelphia or any-where else in the Commonwealth.

However, my dissatisfaction with the result the majority reaches in the instant litigation is based not only on the foregoing policy considerations but, additionally, on my view that the majority's reliance on *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942), is misplaced.

I believe the trial judge correctly charged the jury as to the elements of misdemeanor in office. The majority de-fines misdemeanor in office as "either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive." Majority at 1073 (quoting *Commonwealth v. Peo-ples*, 345 Pa. at 579, 28 A.2d at 794 [1942] ). The following excerpt from the trial judge's charge to the jury shows that his instruction on the law was proper and consistent both with the charges against Bellis and one of our earlier decisions in this case, *Commonwealth v. Bellis*, 497 Pa. 323, 440 A.2d 1179 (1981) (*Bellis II*): [6]

**6.** In *Bellis II,* we rejected Bellis' contention that Section 1104 of the Penal Code precluded prosecution for both the statutory crime of extortion and the common law crimes of misfeasance, malfeasance and non-feasance in office. There, we noted that "when the evidence establishes nothing more than the breach of a penal statute, the accused may not also be convicted of a common law offense which proscribes the same conduct. If, on the other hand, the elements of

Of course, a mere error or judgement [sic] on the part of a public official would not be a crime under ordinary circumstances.  But if he deliberately perverted the functions of his office with a corrupt motive he would be guilty.

Well, then, there are three material elements of the offense known as misdemeanor in office.  First, the defendant must be a public officer within the contemplation of law.

Second, he must have been guilty of an act of commission, that is, doing something, or omission, failing to do something, or of negligent misconduct with respect to the duties of his office which worked an injury to the public or an individual.

Third, that such act or negligent misconduct must have been done intentionally and with an accompanying mental state known as a corrupt mind.

·     ·     ·     ·     ·

The Home Rule Charter of the City of Philadelphia imposes various duties on the elected officials including City Councilmen.  One of them is set forth in Article 10–100 as follows:  No Councilman shall solicit, benefit by or be interested directly or indirectly in any contract for the purchase of property of any kind to be paid for from the City Treasury.  Nor shall he be interested directly or indirectly in any contract for the erection of any structure

the statutory offense are different, the accused may, upon sufficient evidence, be convicted of either or both offenses." *Id.*, 497 Pa. at 329, 440 A.2d at 1182 (footnote and citations omitted).  Referring specifically to the conflicts-of-interest provision set forth in Section 10–100 of the Philadelphia Charter, we held that "[l]ike the extortion statute, this provision addresses misconduct separate and distinct from the common law crime, and therefore does not bar prosecution for those crimes." *Id.*, 497 Pa. at 331 n. 11, 440 A.2d at 1183 n. 11.  The majority's opinion in the case before us is inconsistent with that decision and relies on an expansive interpretation of one sentence in *Commonwealth v. Peoples, supra,* which, as so interpreted, is inconsistent not only with *Bellis II* but also with other case law in this jurisdiction.  *See infra* at 135–137.

or for the supplying of any services to be paid for out of the City Treasury.

N.T. 594–598.[7]

The foregoing language clearly shows that the trial judge instructed the jury on the elements of the common law crime and not a violation of Section 10–100 of the Charter, an offense for which Bellis was not charged. In referring to the Charter provision, the judge was merely giving the jury a concrete example of the type breach of public duty which would establish misdemeanor in office if accompanied by a corrupt motive.

Today the majority holds that, by virtue of Section 1104 of the former Penal Code, a charge of misdemeanor in office may not be predicated on a violation of the conflict-of-

7. For purposes of clarification, the trial judge prefaced these remarks with the following, more general, explanation:

Well, at the time of the events which gave rise to this case the [appellee], Mr. Bellis, and there is no controversy over this, was, I believe you will find, occupied in the position of an elected member of City Council in the County of Philadelphia, and I believe at the time was also the Majority Leader of the Council body. But whether or not he was is not particularly important. He was an elected member of Council.

The Commonwealth has charged that as such officer he did the things that we just related in June of '71 and July of '72. The charge is, therefore, one which is commonly known as misdemeanor in office.

Now, that is an offense that does not appear among the statute books. That does not mean that there is no direct proscription of law against the commission of misdemeanors in office. It only means that the elements and nature of the crime are derived from the common law, the common law as I told you earlier that we brought from England.

The common law is sufficiently broad to punish as a misdemeanor any act which directly injures or tends to injure the public to such an extent as to require the Commonwealth to interfere and punish the wrong doer [sic], as in the case of acts which injuriously affect public morality or obstruct or pervert public justice or the administration of government.

For this reason, if you find that this [appellee] was a public officer, and that he was guilty of conduct which seriously affected or perverted the administration of government as represented in his office, then, he would be guilty as indicted. An indictment will lie against any public officer who is guilty of such willful or negligent misconduct in his office as works injury to the public or to an individual.

interest provision set forth in Section 10–100 of the Philadelphia Home Rule Charter, even where the Commonwealth can establish a corrupt motive, simply because such violation carries a penalty under the municipal law. The import of the majority's decision is that the Commonwealth can succeed on a charge of misdemeanor in office only by proving the performance of a discretionary act with a corrupt motive and not by proving a breach of a positive statutory duty committed with a corrupt motive. This result is ludicrous and certainly not dictated by Section 1104 of the Penal Code or our decision in *Commonwealth v. Peoples, supra.*

In *Peoples,* the defendants, city councilmen, were indicted for misdemeanor in office for having voted and passed a resolution before the council fixing the salaries of the members of the Chester Municipal Authority, to which they had previously elected themselves members, in violation of a provision of the Third Class City Law.[8] We held that Section 1104 of the Penal Code precluded the indictment for the common law offenses since violation of the conflicts-of-interest statute carried a penalty, *i.e.*, forfeiture of office.[9] However, *Peoples* is distinguishable from the instant case in that, there, the Commonwealth could prove no more than a breach of the statutory duty and wholly failed to present evidence of corrupt motive. In fact, we specifically found an absence of improper motive:

8. The statute read as follows:
   Disclosures of Interest by Councilman.—A member who has a personal or private interest in any measure or bill proposed or pending before the council shall disclose the fact to council, and shall not vote thereon, nor take any part in the discussion of the same. If such interested person shall vote without disclosing his interest in such measure or bill, and the same be carried by his vote, he shall forfeit his office, and the measure or bill shall be void. Act of June 23, 1931, P.L. 932, Art. X, § 1009.

9. In my view, the result reached in *Peoples,* which was decided before home rule powers were extended to Third Class cities, is impermissible under Act 62 which expressly prohibits third class municipalities from usurping the state's power to define and punish misdemeanors. *See* 53 P.S. § 1–302(a)(9).

Defendants as councilmen of a third class city did vote salaries to themselves as members of the Authority. They disclosed their interest. Their action was entirely free of fraud or bad faith, and was considered legal at the time. The City Solicitor drew the salary resolution. It was not until our decision months later (November 24, 1941) in *Com. ex rel. McCreary v. Major*, 343 Pa. 355, 22 A.2d 686, that it was settled that the council of a third class city could not legally appoint its members to places on the board of a municipal authority created by that city.

*Id.* 345 Pa. at 579, 28 A.2d at 794. Accordingly, *Peoples* does not control the decision in the case before us. Instead, decisional precedent on point holds that a breach of a positive duty carrying a penalty may serve as a basis for common law misdemeanor in office provided that the breach was intentional and accompanied by an improper or corrupt motive. *See, e.g., Commonwealth v. Brown*, 116 Pa.Superior Ct. 1, 175 A. 748 (1934) (the willful failure of county commissioners, acting from a corrupt motive, to advertise an impending sale of county land in violation of statute carrying a minor penalty, constitutes the common law offense of misdemeanor in office). *See also Commonwealth v. Fahey*, 156 Pa.Superior Ct. 254, 40 A.2d 167 (1944) (distinguishing *Peoples* and holding that breach of a mandatory duty which carried a penalty of removal from office could nevertheless serve as a basis for the common law offense of misbehavior in office where the Commonwealth proved, in addition, that the statutory violation was willful, intentional and deliberate).

None of the cases brought to our attention by the appellee support his contention that Section 1104 of the 1939 Penal Code precludes sentencing under the common law for misdemeanor in office where the Commonwealth can prove that an intentional breach of a mandatory statutory duty, for which there is a penalty prescribed by law, was committed with a corrupt motive.[10]

---

**10.** Cases relied on by the appellee include the following: *Commonwealth v. Zang*, 142 Pa.Superior Ct. 566, 16 A.2d 741 (1940) (where the

Where a public official, acting without a corrupt intent to benefit himself and others, nevertheless violates a mandatory statutory duty, it is appropriate that he be subject only to the penalty expressly prescribed for the substantive provision setting out the duty, even though that penalty is less severe than the one prescribed by the general criminal law, because his act is not accompanied by the *mens rea* required for serious crimes. In contrast, whenever a public official has violated the public trust by misusing his office for personal gain, he should be subject to the full range of punishment for misdemeanor in office prescribed by general law, whether the common law, the former Penal Code or the present Crimes Code. This should be so whether his corrupt actions include a breach of a positive duty under a local ordinance or statute having only local application and carrying a minor penalty or the corrupt performance of a discretionary act. *See* 18 Pa.C.S. § 5302.

Under the majority's holding that Section 10–109 of Philadelphia's Home Rule Charter preempts the sanctions prescribed under general law for misdemeanor in office, this appellee is allowed to misuse his office in return for a personal gain of $9,000.00 at the risk of a $300.00 fine and maximum imprisonment of ninety days. Such a result, and the statutory interpretation which dictates it, are wrong.

Accordingly, I would overrule Superior Court and reinstate appellee's conviction.[11]

FLAHERTY, J., joins in this dissenting opinion.

Commonwealth could establish that school directors intentionally violated a School Code provision imposing a ministerial duty on them, it was not required to establish criminal intent to properly charge school offices with misbehavior in office) and *Commonwealth v. Hubbs (Hubbs II)*, 137 Pa.Superior Ct. 244, 8 A.2d 618 (1939) (Philadelphia official was improperly indicted for misbehavior in office where the duties he allegedly breached were discretionary in nature and the Commonwealth failed to charge fraud, dishonesty or corruption).

11. In addition, I would decide the other issue raised by the parties, specifically, whether under common law the sentence for misdemeanor in office should be determined by analogy to the prescribed sentences for similar statutory offenses or by reference to the Acts of

1790 and 1870 which prescribe sanctions for offenses formerly punishable by the pillory.